**Teri Ann DANIELS a/k/a Teri Ann Daniell, Respondent,**

v.

**STATE of Missouri, Appellant.**

**No. WD 59867.**

Missouri Court of Appeals,
Western District.

Jan. 15, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 2002.

Application for Transfer Denied April 23, 2002.

458

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Karen L. Kramer, Asst. Attys. Gen., for appellant.

Susan L. Hogan, Appellate Defender, Kansas City, for respondent.

Before HOWARD, P.J., and BRECKENRIDGE and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

The State appeals from the motion court's grant of Teri Ann Daniels'[1] Rule 24.035 motion for postconviction relief, vacating the judgment accepting her plea, following Daniels' plea of guilty to the charge of manufacturing methamphetamine. The State's sole point on appeal is

---

1. Daniels' name is also spelled Daniel and Daniell in the record.

that the motion court clearly erred in granting Daniels' motion for postconviction relief, which alleged that her guilty plea was unknowing, involuntary, and unintelligent, on grounds that there was no factual basis for her plea, because the record shows that the facts adduced at the plea hearing were sufficient, as a matter of law, to establish that Daniels committed the crime of manufacturing methamphetamine.

We reverse and remand.

### Facts

On April 4, 2000, Teri Ann Daniels was charged by information with manufacturing a controlled substance, methamphetamine, § 195.211.[2] On May 3, 2000, Daniels appeared in the Circuit Court of Holt County and entered a plea of guilty to the charge. During the plea hearing, Daniels stated under oath that she read the petition to enter a plea of guilty before she signed it, and that the signature on the document was her own. The petition to enter plea of guilty indicated that Daniels received a copy of the information, that she had discussed it with her attorney, and that she fully understood the charge against her. The petition to enter plea of guilty also contains the following sentence: "I represent to the Court that I did the following acts in connection with the charge made against me: Manufacture of a Controlled Substance, Methamphetamine."

During the plea hearing, the court asked Daniels what she did to be charged with the crime, and she responded, "Manufactured methamphetamine." The prosecutor then recited the facts the State would prove if the case went to trial, which were as follows:

[I]n October of '99 the sheriff's department brought the task force and the highway patrol and started developing information. Some of it came from confidential informants concerning the manufacture of methamphetamine being done at the Parker residence down in Forbes, Missouri. They put this together and gathered more information, a search warrant was obtained for Mr. Parker's residence. It was executed on February 22nd this year. Miss Daniell had been living there for a couple of months. According to the information the warrant was executed. There was a substantial quantity of methamphetamine found in various stages of manufacture and processing. Some of it was in liquid form and in suspension of liquid, some was finished product. Extensive paraphernalia for the manufacture scattered throughout the house, including in the upstairs where she and Mr. Wofford were living and downstairs in the front room and kitchen, throughout the house. There was also extensive remnants found back in the trash area where it had obviously been going on for a considerable length of time. That was here in Holt County, Missouri.

The plea court asked Daniels whether she agreed that those facts were accurate and true, and Daniels said they were. The court asked Daniels what her understanding of the plea agreement was, and Daniels said she understood that she would be sentenced to ten years' imprisonment. The plea court asked Daniels if she was pleading guilty because she was, in fact, guilty of the charge, and Daniels said she was. The plea court found that there was a factual basis for the plea, accepted Daniels' plea, and sentenced her to ten years' imprisonment.

On July 24, 2000, Daniels filed a pro se motion for postconviction relief under Rule

---

2. All statutory references are to RSMo 2000.

24.035. On October 23, 2000, Daniels' counsel filed an amended motion for post-conviction relief. In the motion, Daniels claimed that the circuit court clearly erred in accepting her plea of guilty to manufacturing a controlled substance in that there was no factual basis established by which the court could find her guilty. Daniels claimed that the factual basis was insufficient because it did not show that she "knowingly" manufactured methamphetamine and did not relate the method by which she manufactured methamphetamine. There was no hearing on the post-conviction motion.

On April 12, 2001, the motion court entered findings of fact and conclusions of law, granting Daniels' motion for postconviction relief on grounds that there was no factual basis for the plea. The court stated as follows:

> Although Teri A. Daniels stated both in her written plea agreement and upon interrogation that she had manufactured methamphetamine, there was no admission by her or statement by the prosecutor sufficiently outlining the elements of the charge so as to allow the Court to find that Plaintiff in fact was knowingly admitting the violation of the required elements of Section 195.211, RSMo. in that there was no demonstration to the Court or Teri A. Daniel of:
>
> (A) The way Defendant Daniel was involved in manufacturing,
>
> (B) That Defendant Daniel knew, was aware or consciously disregarded a substantial and unjustifiable risk that the substance which was manufactured was methamphetamine, at the time of its manufacture, as required by 325.06, MAI–CR 3rd.

> \* \* \* \* \* \*

This appeal follows.

## Standard of Review

■ On review of a Rule 24.035 motion for postconviction relief, we must uphold the motion court's determination unless the findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Daniels v. State*, 31 S.W.3d 121, 122 (Mo. App. W.D.2000). We will find the motion court's determination clearly erroneous only if we are left with a firm and definite belief that a mistake has been made. *Daniels*, 31 S.W.3d at 122.

## Argument

The State's sole point on appeal is that the motion court clearly erred in granting Daniels' motion for postconviction relief because the record shows that the facts adduced at the plea hearing were sufficient, as a matter of law, to establish that Daniels committed the crime of manufacturing methamphetamine in that the record shows that Daniels read and understood the charge against her, she admitted that she manufactured methamphetamine, she agreed that the State's recital of the facts was true, and she said that she was pleading guilty because she was, in fact, guilty of the crime.

■ Rule 24.02(e) provides that "[t]he court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." As we stated in *Brown v. State*, 45 S.W.3d 506, 508 (Mo.App. W.D.2001):

> Before accepting the guilty plea, the circuit court must "determine facts which defendant admits by his plea and that those facts would result in defendant['s] being guilty of the offense charged." *Hoskin v. State*, 863 S.W.2d 637, 639 (Mo.App.1993). If the facts presented to the court during the guilty plea hearing do not establish the commission of the offense, the court should

reject the guilty plea. *Holloway v. State,* 989 S.W.2d 216, 219 (Mo.App. 1999), *overruled on other grounds by State v. Withrow,* 8 S.W.3d 75 (Mo. banc 1999). A defendant is not required to admit or to recite the facts constituting the offense in a guilty plea proceeding, so long as a factual basis for the plea exists. *State v. Morton,* 971 S.W.2d 335, 340 (Mo.App.1998). "A factual basis is established if the defendant understands the facts recited by the judge or the prosecutor" at the guilty plea proceeding. *Id.* A defendant, however, should express "an awareness of the nature and elements of the charge to which he or she pleads guilty." *Vann v. State,* 959 S.W.2d 131, 134 (Mo.App.1998).

" '[A] trial court is not required to explain every element of a crime to which a person pleads guilty' so long as the defendant understands the nature of the charge." *State v. Taylor,* 929 S.W.2d 209, 217 (Mo. banc 1996), quoting *Beaver v. State,* 702 S.W.2d 149, 150 (Mo.App. S.D.1985). "[I]t is not necessary that the movant admit to, or even believe, the veracity of the elements of the charges against him in order for his guilty plea to be valid." *Bird v. State,* 657 S.W.2d 315, 316 (Mo.App. E.D. 1983). Our focus "is on whether the plea was made intelligently and voluntarily, not whether a particular ritual is followed or every detail explained." *Holloway v. State,* 989 S.W.2d 216, 219–20 (Mo.App. W.D.1999), *overruled on other grounds by State v. Withrow,* 8 S.W.3d 75 (Mo. banc 1999).

Section 195.211.1 provides as follows:

Except as authorized by sections 195.005 to 195.425 and except as provided in section 195.222, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.

■ "The crime of the manufacture of methamphetamine requires the state to prove the defendant: (1) manufactured methamphetamine and (2) was aware the substance he manufactured was methamphetamine." *Salmons v. State,* 16 S.W.3d 635, 638 (Mo.App. W.D.2000); *see also State v. Dowell,* 25 S.W.3d 594, 603 (Mo. App. W.D.2000) (stating the elements are that the defendant 1) knowingly manufactured methamphetamine; and 2) knew that the substance he manufactured was methamphetamine).

MAI–CR 3d 325.06.1 provides as follows:

(As to Count ___, if) (If) you find and believe from the evidence beyond a reasonable doubt:

First, that (on) (on or about) [date], in the (City) (County) of _____, State of Missouri, the defendant knowingly (manufactured) (produced) ([name of controlled substance]) (more than 5 grams of marijuana), a controlled substance, by [Describe method of manufacturing or producing such as growing, planting, cultivating, harvesting, etc.] it, and

Second, that defendant (knew) (or) (was aware) that the substance he (manufactured) (produced) was ([name of controlled substance]) (a controlled substance),

then you will find the defendant guilty (under Count ___) of (manufacturing) (producing) (a controlled substance) (marijuana).

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Note on Use 3 following the instruction states to "insert how the controlled sub-

stance was manufactured or produced" and cites § 195.010(23) for the definition of the term "manufacture." Note on Use 4 following the instruction provides that "[s]ince the statute does not prescribe a mental state, the crime is committed if the defendant acted 'knowingly.' A mental state of 'reckless' is not sufficient. Section 562.021.3, RSMo 2000."

In response to the State's point on appeal, Daniels makes two arguments. First, she argues that the State did not provide the court with any facts from which it could find that she "knowingly" manufactured methamphetamine. Second, she argues that the State did not provide the court with any facts from which it could determine the method by which she allegedly manufactured the methamphetamine.

## I. Proof of "Knowing" Manufacture

We first address Daniels' argument that the State did not prove that she "knowingly" manufactured methamphetamine. In support of her argument, Daniels relies on *State v. Withrow*, 8 S.W.3d 75 (Mo. banc 1999). In *Withrow*, the defendant was convicted by a jury of attempting to manufacture methamphetamine. *Withrow*, 8 S.W.3d at 76. On appeal, the defendant argued that there was insufficient evidence that he constructively possessed any materials used to manufacture methamphetamine. *Id.* The State's theory was that the defendant had possession of the east bedroom, the locked closet and the jar where the "substantial step" in the manufacturing process had been started by putting the pills in the liquid. *Id.* at 80. Under the State's theory, if the defendant had either actual or constructive possession of the materials being used to manufacture the controlled substance, the evidence was sufficient to convict. *Id.*

The court stated as follows:

If actual possession is not present, as in this case, constructive possession of the drugs or the drug components and apparatus will satisfy this burden if other facts exist which buttress the inference of the defendant's requisite mental state. Constructive possession requires, at a minimum, evidence that the defendant had access to and control over the premises where the materials were found. Exclusive possession of the premises containing the materials raises an inference of possession and control. When the accused shares control over the premises, as here, further evidence is needed to connect him to the manufacturing process. The mere fact that a defendant is present on the premises where the manufacturing process is occurring does not by itself make a submissible case. Moreover, proximity to the contraband alone fails to prove ownership. There must be some incriminating evidence implying that the defendant knew of the presence of the manufacturing process, and that the materials or the manufacturing process were under his control.

The only evidence linking defendant to the drug components and apparatus was the following: (1) during the time the house was under surveillance, officers observed defendant coming to and going from the residence five or six times; (2) his car was parked at the house on at least two occasions; (3) when executing the search warrant, police found defendant exiting a bedroom containing firearms, drug-making equipment, and a closet, probably locked, with pills undergoing the first stage of methamphetamine production; (4) a strong odor of solvent emitted from the room; and (5) a letter to defendant at a different address in another location in the house. This evidence, at best, indicates

that defendant was frequently present in a house in which there was an ongoing attempt to manufacture methamphetamine. The evidence of the actual manufacture was in the east bedroom and, more importantly, in the locked closet. Even viewed in the deferential light owed a jury verdict, the evidence does not support a conclusion that defendant had constructive possession over the bedroom, the closet, or their contents. No evidence demonstrated he lived at the house. Nothing beyond being present in the room truly connects defendant to the manufacturing apparatus or the jar in the closet.

*Id.* at 80–81 (Mo. banc 1999) (citations omitted).

The State distinguishes *Withrow* on the bases that 1) Withrow never confessed to being involved in manufacturing methamphetamine; 2) Daniels, unlike Withrow, lived in the residence where the manufacturing took place; 3) the evidence in this case indicated that the manufacturing had been going on for "a considerable length of time"; and 4) the lab in this case was not locked away in a closet, but rather the methamphetamine, in various stages of production, was found throughout the house, including in Daniels' own living area. In addition to the differences pointed out by the State, we also note that *Withrow* involved a challenge to the sufficiency of the evidence to convict on a methamphetamine manufacturing charge. This case involves the issue of whether there was an adequate factual basis to support Daniels' guilty plea.

■ In her petition to enter a plea of guilty, Daniels affirmed that she had received a copy of the information, that she had discussed it with her attorney, and that she fully understood the charge against her. The petition to enter plea of guilty also states: "I represent to the Court that I did the following acts in connection with the charge made against me: Manufacture of a Controlled Substance, Methamphetamine." During the plea hearing, Daniels said that she read the petition to enter a plea of guilty before she signed it, and that she signed the petition. The plea court asked Daniels what she did to be charged with the crime, and she responded, "Manufactured methamphetamine." The prosecutor then recited the facts the State would prove if the case went to trial, which included the facts that 1) Daniels had been living in the methamphetamine lab for two months; 2) there was a substantial quantity of methamphetamine found in various stages of manufacture and processing in the house where the search warrant was executed; 3) extensive paraphernalia for the manufacture of methamphetamine was scattered throughout the house, including in the area where Daniels was living; and 4) there were "extensive remnants" found, which indicated the manufacture had been going on "for a considerable length of time." Daniels agreed that those facts were true, and when asked if she was pleading guilty because she was, in fact, guilty of the charge, Daniels said yes.

We hold that an adequate factual basis was demonstrated to show that Daniels "knowingly" manufactured methamphetamine. Therefore, the motion court erred in granting Daniels' motion for postconviction relief on grounds that there was no factual basis for the plea because the State failed to demonstrate that Daniels knew the substance manufactured was methamphetamine at the time of manufacture.

## II. Proof of Method of Manufacture

We next address Daniels' argument that the State did not set forth any facts indicating which method she allegedly used to manufacture methamphetamine. Citing

§ 195.211.1 and MAI–CR 3d 325.06.1, Daniels argues that, in addition to proving that she manufactured methamphetamine and that she knew or was aware the substance was methamphetamine, the State was also required to prove the method of manufacture. The State argues that the method of manufacture is not a separate element of the crime, but merely a detail of the offense and part of the definition of the term "manufacture."

Section 195.010(23) defines "manufacture" as follows:

[T]he production, preparation, propagation, compounding or processing of drug paraphernalia or of a controlled substance, or an imitation controlled substance, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. This term does not include the preparation or compounding of a controlled substance or an imitation controlled substance or the preparation, compounding, packaging or labeling of a narcotic or dangerous drug.

During his recitation of the facts during the plea hearing, the prosecutor stated that "[t]here was a substantial quantity of methamphetamine found in various stages of manufacture and processing. Some of it was in liquid form and in suspension of liquid, some was finished product." Daniels agreed that this recitation of the facts was accurate. The State argues that this adequately shows that Daniels was manufacturing methamphetamine, and no more detailed description of the method of manufacturing is necessary.

As previously stated, the case law has set forth only two elements that must be proven in a manufacturing charge. No Missouri court has set forth "method of manufacture" as an element of the crime of manufacturing methamphetamine. Furthermore, § 195.211 does not set forth method of manufacture as an element. Daniels' argument and the motion court's conclusion on this issue seem to hinge on the language in MAI–CR 3d 325.06.1, which mandates that the method of manufacture be included in the jury instruction on a manufacturing charge.

■ We hold that the method of manufacture is a detail of the offense, the recitation of which is not necessary to establish a factual basis to support a plea of guilty to manufacturing methamphetamine. Therefore, the motion court erred in granting Daniels' motion for postconviction relief on grounds that there was no factual basis for the plea because the State failed to indicate the way Daniels was involved in the manufacturing.

### Conclusion

It is preferable to do more than to do less when establishing a factual basis for a plea. This case certainly approaches the minimum requirements. However, the circumstances of this case indicate that Daniels made a knowing and voluntary plea of guilty to the charge of manufacturing methamphetamine, and the motion court clearly erred in granting Daniels' motion for postconviction relief, vacating the judgment accepting her plea.

The judgment of the motion court is reversed and the cause is remanded to the motion court with directions to reinstate Daniels' conviction.

BRECKENRIDGE and NEWTON, JJ., concur.