Cortez D. PARGO, Appellant,

v.

STATE of Missouri, Respondent.

No. 27377.

Missouri Court of Appeals, Southern District, Division II.

May 18, 2006.

Melinda K. Pendergraph, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Jayne T. Woods, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant Cortez D. Pargo ("Movant") appeals the motion court's denial without an evidentiary hearing of his amended mo-

tion to vacate, set aside or correct judgment and sentence filed pursuant to Rule 24.035.[1] In his sole point on appeal, Movant maintains the motion court erred in denying his 24.035 motion "because the guilty plea record failed to establish a sufficient factual basis for second degree robbery ...," thus, violating Movant's "rights under Rules 24.02 and 24.035 and to due process of law, under the 14th Amendment to the United States Constitution and Article I, [section] 10 of the Missouri Constitution...." We dismiss the appeal because of Movant's violation of the escape rule.

Movant was charged by amended information on September 8, 2003, with the class B felony of robbery in the second degree, a violation of section 569.030.[2] Movant appeared before the trial court on that date to enter into a plea agreement with the State in which he agreed to plead guilty to the charge of robbery in the second degree in exchange for the State's recommendation of a sentence of twelve years in the Department of Corrections with the State opposing probation. At the hearing before the trial court, Movant acknowledged that he understood the charge against him; that he understood the plea agreement; and that he desired to plead guilty to the crime for which he was charged.

In setting out the factual basis for Movant's guilty plea, the State recited that at 2:00 a.m. on December 24, 2001, Christian Owens ("Owens") and Paul Lee ("Lee") met with Terrance Moffite ("Moffite") and Ronald Bo Jarrett ("Jarrett") in the park-

1. We note that this matter had been set for an evidentiary hearing in the motion court on December 8, 2005; however, Movant waived his request for an evidentiary hearing on September 29, 2005.
Unless otherwise stated, all rule references are to Missouri Court Rules (2006) and all statutory references are to RSMo 2000.

2. Movant was originally charged with the class A felony of robbery in the first degree, a violation of section 569.020, as well as the felony of armed criminal action, a violation of section 571.015.

ing lot of a Dillon's supermarket in Springfield, Missouri. Moffite, who was an acquaintance of Lee's, had contacted Lee earlier in the day about purchasing some stereo equipment Lee had for sale. After the parties met at Dillons, Moffite requested that Lee and Owens park "behind the grocery store" so that he could look at the stereo equipment. Once they were behind the store, Lee got out of the vehicle and opened the trunk for Moffite and Jarrett. While they were standing there, Movant and Chris Holdren ("Holdren") approached the vehicle.

The State, acknowledging that "there was a lot of confusion ... a lot of dispute about exactly what transpired at that point," went on to state that Moffite pulled a crowbar out of his jacket, pushed the crowbar against Lee's throat, and then pushed Lee to the ground. When Owens attempted to get out of the vehicle to aid Lee, Jarrett prevented her from exiting the vehicle and "informed her that they were in the process of robbing [Lee]; they were going to steal the stuff, and they were not going to hurt him, but she needed to stay there...." While Moffite and Jarrett were occupied, Movant and Holdren took the stereo equipment from the vehicle and carried it back to their apartment complex a short distance away. After stealing Lee's wallet, Moffite forced Lee back into the vehicle. Jarrett then told Lee and Owens that " 'if you try to tell the cops, we know where you live. We're going to come after you, and kill you.' " Lee and Owens then left the scene and contacted authorities.

After the arrest of Jarrett and Moffite, the police performed a consensual search on Movant's apartment. The search uncovered a crowbar underneath a chair in his living room and an amplifier that had been taken from Lee's vehicle in a laundry basket. The remainder of the stolen goods were recovered from a vehicle owned by Moffitte's girlfriend. Owens later told police that while Movant "did not participate in any of the physical altercation" against Lee, she was certain he was involved in the robbery, which appeared to her "to be a concerted effort ..." between the four men involved; however, Movant told police that while "he was not aware of the exact nature of the activities that were going to take place [at Dillons] ... he, in fact, was there and he did take the stereo equipment...."

After the State's recitation of the factual basis of the plea, Movant stated that he had no disagreement with the State's version of events and acknowledged that he had taken the items from Lee. The trial court then read the plea agreement to Movant; determined he had not been induced into pleading guilty by anyone; established that Movant was pleading guilty because he was, in fact, guilty; and found that the plea "was made freely, voluntarily and intelligently after a full understanding of the charge as amended." Thereafter, the court accepted Movant's guilty plea, ordered a pre-sentence investigation report, and set the matter for sentencing on September 21, 2003.

At that time, the trial court cautioned Movant that

[i]f [he] were to be released before [his] sentencing date and [did not] show up, some bad things [we]re going to happen. There will be an arrest warrant issued, [he] could face some new charges, but most importantly, if [he] took off and didn't show up for sentencing, once [the trial court] got [him] back ... [the trial court] would not let [him] out of [his] guilty plea ... [and the trial court] would [no longer] be bound by this plea agreement.

Movant informed the trial court that he understood the importance of appearing at

his sentencing. Before adjourning the matter, the trial court also told Movant,

> it's important that you go over to probation and parole on South Campbell before the end of the day tomorrow to set up your interview for this information I need [for the pre-sentence investigation report]. If you don't do that then I'll issue another warrant and they can come talk to you in the jail.

Movant told the trial court that he understood the requirements and court was adjourned.

Movant failed to appear for both his presentence investigation report and his sentencing on November 21, 2003. The trial court issued a capias warrant on November 24, 2003, which was returned on December 5, 2003. Movant's sentencing was then rescheduled for January 29, 2004.

At the rescheduled sentencing hearing, the State referenced the fact that Movant's failure to appear had resulted in problems with the prosecution of the other individuals involved in the robbery. The State remarked that this case "has been set and reset, and set and reset ..." such that "the victims ... have been kind of repeatedly jerked around ..." and were now "simply refus[ing] to cooperate with the prosecution." Movant's counsel informed the trial court that Movant failed to appear due to threats he received from Jarrett about the possibility of Movant testifying against Jarrett in Jarrett's prosecution. Movant's counsel related the State dismissed the charges against Jarrett, who was the most culpable defendant and who had spent the least amount of time in jail, while Movant, who was "by all accounts one of the least culpable individuals," and who had agreed to cooperate with the State, was facing twelve years in the Missouri Department of Corrections. Movant's counsel argued that such a result was

"unjust" and requested that Movant receive probation.

The trial court sentenced Movant to twelve years in prison but suspended the execution of the sentence and placed Movant on probation for five years. Several months later, while Movant was on probation, Movant absconded and his probation officer filed a violation report with the trial court on April 30, 2004. No revocation hearing was held at that time. Thereafter, in June of 2004, Movant's probation officer filed another violation report with the trial court, followed by a motion to revoke probation. The trial court issued another capias warrant for Movant's arrest, which was duly returned on November 24, 2004. At a January 7, 2005, revocation hearing, Movant admitted to violating the terms of his probation and the trial court executed the prior, twelve-year sentence of imprisonment.

Movant then filed his *pro se* "Motion to Vacate, Set Aside or Correct the Judgment or Sentence" on March 18, 2005, and his appointed counsel filed an "Amended Motion under Rule 24.035" on July 26, 2005. As previously related, Movant waived an evidentiary hearing on this motion. Thereafter, the trial court issued its findings of fact and conclusions of law which denied Movant's motion. This appeal followed.

█ Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Ross v. State*, 48 S.W.3d 667, 669 (Mo.App.2001). "'The findings and conclusions are deemed erroneous if after reviewing the record, this [C]ourt is left with the definite and firm belief that a mistake has been made.'" *Goings v. State*, 1 S.W.3d 600, 601 (Mo.App.1999) (quoting *Saffold v. State*, 982 S.W.2d 749,

752 (Mo.App.1998)). We presume that the motion court's findings and conclusions are correct. *Butts v. State*, 85 S.W.3d 132, 134 (Mo.App.2002).

■ Rule 24.02(e) provides that "[t]he court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." Prior to accepting a plea of guilty, the trial court must "determine facts which defendant admits by his plea and that those facts would result in defendant being guilty of the offense charged." *Hoskin v. State*, 863 S.W.2d 637, 639 (Mo.App.1993). "A defendant is not required to admit or to recite the facts constituting the offense in a guilty plea proceeding, so long as a factual basis for the plea exists." *Brown v. State*, 45 S.W.3d 506, 508 (Mo.App.2001). " 'A trial court is not required to explain every element of a crime to which a person pleads guilty so long as the defendant understands the nature of the charge.' " *Daniels v. State*, 70 S.W.3d 457, 461 (Mo. App.2002) (internal quotations omitted). This Court's " 'focus is on whether the plea was made intelligently and voluntarily [and not on] whether a particular ritual is followed or every detail explained.' " *Daniels*, 70 S.W.3d at 461 (internal quotation omitted). "Absent an abuse of discretion, this Court defers to the trial court's determination as to whether a prisoner's guilty plea was voluntary." *Jenkins v. State*, 9 S.W.3d 705, 708 (Mo.App.1999).

■ With that being said, the State urges in its brief that this Court dismiss Appellant's appeal by applying "the escape rule" to the present matter. The escape rule is a judicially-created doctrine which may be utilized by a reviewing court to dismiss an appeal where the delay caused by the escape has an adverse effect on the criminal justice system. *Nichols v. State*, 131 S.W.3d 863, 865 (Mo.App.2004); *State v. Troupe*, 891 S.W.2d 808, 810 (Mo. banc 1995).[3] "The escape rule operates to deny the right of appeal to one who, following a conviction, attempts to escape justice." *State v. Thornton*, 930 S.W.2d 54, 56 (Mo. App.1996). The escape rule applies to appeals on the merits as well as to motions for post-conviction relief under Rules 29.15 and 24.035. *Id.* "The escape rule can be invoked to dismiss post-conviction appeals regardless of whether the motion court reaches the merits of a movant's claim or dismisses the motion based on its application of the escape rule." *Wagner*, 172 S.W.3d at 924. "The escape rule applies to errors that occur prior and up to the time of escape, but errors occurring after recapture remain appealable." *Id.* We note that while "[a]pplication of the escape rule clearly requires a relationship between the escape and prejudice to the criminal justice system ... that does not mean that

---

3. *See also Wagner v. State*, 172 S.W.3d 922, 925 (Mo.App.2005) (applying "the escape rule" where a movant in a post-conviction action failed to appear at his sentencing; caused a warrant to be issued for his arrest; "required law enforcement resources to be employed to execute the warrant;" and caused "a forty-nine day delay in sentencing"); *Fogle v. State*, 99 S.W.3d 63, 65 (Mo. App.2003) (applying the escape rule where defendant's failure to appear at sentencing resulted in a seven-week delay between the original date of sentencing and the actual sentencing as well as necessitating a warrant and law enforcement involvement); *Kemper v. State*, 129 S.W.3d 439, 440 (Mo.App.2004) (holding that dismissal of the defendant's appeal was warranted where defendant's failure to appear at sentencing caused a seven-week delay in the proceedings and required law enforcement to serve a warrant for his re-arrest); *President v. State*, 925 S.W.2d 866, 868 (Mo.App.1996) (applying the escape rule where a delay of four months between original sentencing date and actual sentencing date showed disrespect for the criminal justice system); *Troupe*, 891 S.W.2d at 810 (holding that an eight month sentencing delay was sufficient for dismissal of appeal under the escape rule).

the 'rule may be applied by an appellate court only when the appellate process itself is substantially prejudiced.'" *Thornton*, 930 S.W.2d at 56 (quoting *Troupe*, 891 S.W.2d at 811 (internal citations omitted)). "Whether dismissal of the escapee's appeal is warranted is addressed to the sound discretion of the appellate tribunal." *State v. Surritte*, 35 S.W.3d 873, 874 (Mo.App. 2001).

 *State v. Brown*, 974 S.W.2d 630, 632 (Mo.App.1998), sets out that the justifications for the escape rule include the following

(1) the need for a court to have control over the defendant before making a decision on appeal; (2) curtailment of administrative problems caused by the defendant's long absence; (3) preventing prejudice to the state in the event of remand for a new trial; (4) preventing defendants from selectively abiding by court decisions; (5) discouraging escape; ... (6) encouraging voluntary surrender[;] ... (7) preserving respect for the criminal justice system; and (8) promoting the dignified operation of the appellate courts.

Additionally, application of the escape rule "does not violate a defendant's constitutional rights because neither a right to appeal a conviction nor a right to a state post-conviction proceeding exists." *Echols v. State*, 168 S.W.3d 448, 451 (Mo.App. 2005).

Here, following his plea of guilty, Movant was required to show up at his probation officer's office for his pre-sentence investigation report and he failed to do so. Thereafter, Movant failed to appear at his sentencing such that the trial court was required to issue a capias warrant for his arrest. Because Movant failed to appear for sentencing valuable law enforcement and judicial resources were wasted.[4] It is clear that "defendant's failure to appear for sentencing constitutes an 'escape' under the rule." *Wagner*, 172 S.W.3d at 925; *see State v. Crump*, 128 S.W.3d 642, 643 (Mo.App.2004).

Additionally, Movant was finally sentenced over two months after his original sentencing was scheduled and, at that time, the State detailed the problems Movant's escape had caused relative to the prosecution of the other individuals involved in the robbery. The trial court chastised Movant for failing to appear and again warned him of the consequences for failing to comply with court orders as well as the terms of his probation. Regardless of the warnings, a mere three months into his probation period Movant again absconded; a warrant had to be issued for his arrest; and he had to be returned to custody, again, by the sheriff's department.[5] "'Those who seek the protection of this legal system must ... be willing to abide by its rules and decisions'" and Movant clearly has chosen not to do so. *Rulo v. State*, 804 S.W.2d 866, 866 (Mo. App.1991) (quoting *State v. Wright*, 763 S.W.2d 167, 168–69 (Mo.App.1988)).

Accordingly, this Court finds that Movant's two escapes coupled with the fact that the escapes delayed Appellant's legal proceedings for a number of months,

---

4. We also note that in applying the escape rule, "the length of the period of escape is not the only factor for consideration." *Surritte*, 35 S.W.3d at 875. Here, while Movant absconded for a rather short period of only a couple of months, he did so on two different occasions and each occasion necessitated a warrant to secure his return and arrest.

5. "Escape from probation supervision has also been held to justify dismissal of an appeal." *Surritte*, 35 S.W.3d at 875; *see also Hicks v. State*, 824 S.W.2d 132 (Mo.App. 1992).

showed Appellant's intent to "flout[ ] the authority of the courts from which he now seeks post-conviction relief and had an adverse impact on the administration of criminal justice." *Nichols,* 131 S.W.3d at 865. "[W]e are unmoved by Movant's explanation for failing to appear for sentencing and find it an affront to the dignity of the courts, especially in light of the repeated warnings that the plea court gave Movant at the plea hearing." *Wagner,* 172 S.W.3d at 925. Movant "has forfeited his right to appeal." *Nichols,* 131 S.W.3d at 865. Movant's appeal is dismissed.

SHRUM, P.J., and GARRISON, J., concur.