**Courtney REID, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 86566.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 30, 2006.

Ellen H. Flottman, Assistant Public Defender, Columbia, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Courtney Reid ("Movant") appeals from the judgment of the Montgomery County Circuit Court denying his Rule 24.035 motion for post-conviction relief. Movant contends that the motion court clearly erred in denying, without an evidentiary hearing, claims that: (1) his counsel misinformed him regarding his parole eligibility; (2) his counsel failed to advise him that the victim's recantation provided a valid defense; and (3) the State failed to establish a factual basis for his plea. Because we hold that Movant's allegation with respect to his parole eligibility is not refuted by the record, we reverse and remand for a hearing on that allegation only.

### Statement of the Facts and Proceeding Below

Prosecutors charged Movant with second degree domestic assault, felony stealing, and possession of a controlled substance as a prior and persistent offender. At the time Movant was charged, he was on probation for other offenses. Subsequently, Movant entered into a plea agreement with the State and agreed to plead guilty in exchange for a State recommendation of nine years on the domestic assault and felony stealing charges concurrent with sentences imposed in the revoked probation cases.[1]

At the plea hearing, the State averred that it could establish the following facts on the domestic assault charge: Defendant was the live-in boyfriend of Shatoyna Jennings. Ms. Jennings reported to a police officer that, on May 9 at four o'clock in the morning, she was asleep in her bed when Movant arrived, apparently intoxicated. After Movant entered Ms. Jennings' bedroom and woke her up, Movant and Ms. Jennings began to argue and Movant threw shoes at Ms. Jennings and shoved her off the bed. Movant grabbed a BB gun and CO2 cartridge and went into the living room, where he began shooting BB's into the wall. Ms. Jennings tried to stop Movant and he shot her in the right and left leg. Ms. Jennings told Movant to leave the house, and as he left, he threatened to shoot Ms. Jennings in the face. A police officer later observed that BB's penetrated Ms. Jennings' clothing and skin and caused bleeding, and noted that Ms. Jennings reported a stinging sensation from the wounds.

The State further asserted that it would prove the following facts on the charge of felony stealing: After Movant left Ms.

---

1. The State withdrew the charge of possession of a controlled substance in exchange for Movant's guilty plea on the other charges.

Jennings' house on May 9, he borrowed a vehicle from Kelly Crooks. Movant promised he would return the vehicle within "a couple of hours." Later, Movant telephoned Ms. Crooks saying he would return the car that day. Ms. Crooks demanded that Movant return the car immediately. Movant did not comply. When Movant phoned Ms. Crooks in the evening, Ms. Crooks told Movant that she would press charges if he did not return the car immediately. She heard someone in the background threatening to "blow up" the car. Movant told Ms. Crooks that he would return the car in a "little while." A short while later, Movant again telephoned Ms. Crooks. He told her that he would drop the car off at Mid Rivers Mall. Ms. Crooks attempted to locate the vehicle through the St. Peters Police Department, but the car was never recovered.

During the plea hearing, Movant testified that he agreed with the above-stated facts. Thereafter, the trial court found a factual basis for the charges and that Movant understood the nature of the charges and that the plea was voluntary. Movant acknowledged that he understood that the plea agreement provided for punishment of nine years concurrent on each charge, to run concurrently with the sentences imposed for his probation cases. Thereafter, the trial court sentenced Movant to a total of nine years in the Department of Corrections, consistent with the plea agreement.

Following the plea and pronouncement of sentence, the trial court inquired into Movant's satisfaction with his attorneys. The trial court explained that the questions applied to "anyone from the public defender's office who has represent [sic] [Movant] in any of these cases." When the trial court asked Movant if "any and all of them [did] everything [Movant] asked them to do," Movant responded yes. In answer to the trial court's question regarding Movant's satisfaction with the public defender's services, Movant answered yes. Movant also denied that he had any complaints about any of the public defenders. Furthermore, Movant agreed that no threats or promises had been made to him about "what sentence [he would] receive."

Movant filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence on May 6, 2004. Appointed counsel filed an amended motion on July 23. In his amended motion, Movant alleged that, before his plea hearing, Ms. Jennings called Movant's plea counsel and told plea counsel that she had fabricated the allegation that Movant assaulted her. Movant further alleged that Ms. Jennings told plea counsel that she would not testify at trial that Movant assaulted her. Movant argued that plea counsel failed to inform him that Ms. Jennings' recantation presented a valid defense. Movant stated that, had he been informed that Ms. Jennings' recantation could serve as the basis for a successful defense, he would not have pleaded guilty, but instead would have proceeded to trial.

Movant further alleged that plea counsel incorrectly informed him that he would be eligible for parole after eighteen months, and that Movant would not have pleaded guilty had trial counsel correctly informed him of his parole eligibility. Movant also alleged that there was no factual basis for the felony stealing and domestic assault charges.

The State filed an answer to Movant's amended motion and attached an affidavit from Movant's plea counsel. The State relied on the affidavit of plea counsel to allege that Movant knew of the recantation, but understood that a trial would be risky and that a guilty plea was in his best interests. The State also argued, citing plea counsel's affidavit, that although plea counsel incorrectly advised Movant that he

would be eligible for parole in 18 months, plea counsel also told Movant that he could not promise how much time he would have to serve before he would be granted parole and the "only guaranteed 'out date' was the final day of his nine year sentence." Finally, in its answer to the Movant's amended motion, the State argued that the record clearly reflected that there was a factual basis for both the felony stealing and the domestic assault charges.

The motion court denied Movant's motion without an evidentiary hearing. Regarding the recantation, the motion court concluded that Movant's allegations were "indirectly refuted" by the record, and "completely" refuted by plea counsel's affidavit. Regarding the incorrect parole information, the motion court determined that the transcript of the sentencing hearing "indirectly refuted" Movant's allegation and plea counsel's affidavit "further refuted" Movant's allegation. Finally, the motion court found that the amended information and the facts asserted at the plea hearing "directly refuted" Movant's contention that the plea lacked a factual basis.

### Standard of Review

■ Our review of the motion court's denial of post-conviction relief pursuant to Rule 24.035 is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *Willoughby v. State*, 81 S.W.3d 676, 679 (Mo. App. S.D.2002). Findings and conclusions are clearly erroneous if, upon review of the record, we are left with the firm impression that a mistake has been made. *Id.* Movant carries the burden of proving, by a preponderance of evidence, the motion court clearly erred. Rule 24.035(k); *Morales v. State*, 104 S.W.3d 432, 434 (Mo.App. E.D.2003).

■ The motion court is not obligated to hold an evidentiary hearing on a motion for post-conviction relief unless: (1) movant alleged facts, rather than conclusions, warranting relief; (2) the facts alleged raise matters not conclusively refuted by the files and record; and (3) the matters complained of resulted in prejudice to movant. *Haddock v. State*, 75 S.W.3d 872, 876 (Mo.App. W.D.2002); see also *Morales v. State*, 104 S.W.3d 432, 434 (Mo.App. E.D.2003).

### Discussion

**A. Motion court's reliance on plea counsel's affidavit.**

In denying Movant's claim regarding plea counsel's: (1) failure to advise that the victim's recantation might provide a valid defense; and (2) provision of erroneous information regarding parole eligibility, the motion court relied principally on the affidavit from Movant's plea counsel attached to the State's answer. Movant argues that the trial court erred in relying on the affidavit to deny him an evidentiary hearing.

■ As the State acknowledges, in the absence of a stipulation of the parties, an affidavit may not be treated as evidence. *State v. Henderson*, 954 S.W.2d 581, 586 (Mo.App. S.D.1997). Both parties agree that neither stipulated to the use of plea counsel's affidavit. The use of plea counsel's affidavit is particularly problematic in the absence of an evidentiary hearing. Quite obviously, the motion court not only considered testimony on behalf of the State while denying that opportunity to Movant, but also implicitly determined that the record alone was insufficient to allow a ruling on Movant's claims. Although the State agrees that the motion court's use of the affidavit was improper, the State contends that because the motion court reached the correct result, the error

is immaterial. Movant urges us to determine whether he is entitled to an evidentiary hearing without consideration of the affidavit. We agree with Movant's approach and accordingly analyze whether the record, without reference to plea counsel's affidavit, supports the grant of an evidentiary hearing.

**B. Failure to advise that victim's pretrial recantation provided a valid defense.**

In his first point, Movant claims that the motion court erred in denying his motion without an evidentiary hearing because the record does not refute his allegation that plea counsel failed to inform him that the victim's recantation was a valid defense.[2] Movant contended in his amended motion that:

> Long prior to movant's plea, the alleged victim called movant's plea counsel, Justin Carver, and told him that she had fabricated the allegation that movant had assaulted her. Counsel Carver, however, did not inform movant that the recantation by Ms. [Jennings]would constitute the basis for a successful defense. Had counsel told movant of the effect of the recantation, movant would have rejected pleading guilty and insisted on proceeding to trial.

Significantly, Movant does not allege that plea counsel failed to inform him of the recantation. Rather, Movant claimed that plea counsel failed to advise of the "effect of the recantation."

Movant cites one pertinent case, *Henderson v. State*, 32 S.W.3d 769 (Mo. App. S.D.2000), in support of his claim that he is entitled to an evidentiary hearing to test the credibility of his claim that trial counsel failed to explain the effect of the recantation. In *Henderson*, the movant claimed that trial counsel did not discuss the "exculpatory impact" of a pre-trial recantation. *Id.* at 771. In contrast to this case, the movant in *Henderson* also claimed that his trial counsel never informed him that the victim had told his counsel and the prosecution that the alleged crime never occurred. *Id.* In rejecting the movant's claims of ineffective assistance, the Southern District noted that the motion court found that trial counsel discussed the recantation with the movant prior to trial. *Id.* at 771–772. Likewise, here, the record supports a finding that Movant knew of the recantation before trial.

■ Given that trial counsel informed Movant prior to his plea that the victim had recanted, his conclusory statement that he was unaware that he had a valid defense is insufficient to warrant a hearing. Moreover, we do not believe, that under the circumstances here, counsel provided ineffective assistance even if he failed to advise Movant that the victim's recantation "would constitute the basis for a successful defense."

**C. Provision of erroneous advice regarding parole eligibility.**

In his second point, Movant contends that the motion court erred in denying Movant's motion without an evidentiary hearing because counsel misinformed movant regarding the date he would be eligible for parole. More specifically, Movant alleged that his trial counsel advised him erroneously that he would be eligible for parole after serving eighteen months and

---

**2.** The motion court specifically addressed Movant's "valid defense" claim as follows: Movant's allegation of ineffective assistance due to lack of knowledge of a valid defense based on the victim's recantation of assault is completely refuted by the sworn Affidavit of Justin Carver, which is attached as State's Exhibit 1 to Respondent's answer to Movant's Motion Under Rule 24.035.

he relied on this misinformation in entering his guilty plea. Movant further alleged that he later learned that he was required to serve 40% of his nine-year sentence or forty three months.

 Generally, counsel has no duty to inform a defendant about collateral consequences of a guilty plea, such as parole eligibility. *Martin v. State,* 78 S.W.3d 197, 199 (Mo.App.E.D.2002). However, we have distinguished between a failure to advise and the provision of erroneous advice. *Hao v. State,* 67 S.W.3d 661, 663 (Mo.App. E.D.2002). As we held in *Hao,* while neither the trial court nor counsel is obligated to inform a defendant about parole eligibility, erroneous advice may affect the voluntariness of a guilty plea. *Id.* See also *Shackleford v. State,* 51 S.W.3d 125, 128 (Mo.App. W.D.2001) (allegations entitled movant to relief stated where movant alleged an affirmative act of misinformation by plea counsel and contended he would have refused to plead had he known the accurate information); *Fogle v. State,* 124 S.W.3d 509, 512 (Mo.App. S.D.2002) ("If counsel affirmatively misrepresents a collateral consequence of pleading guilty, that misrepresentation may result in ineffective assistance of counsel.") Because Movant alleged both an affirmative act of misinformation and a refusal to plead had his counsel provided accurate information, he satisfied his obligation to allege facts warranting relief.

In addition to stating facts warranting relief, Movant must also establish that his allegations are not refuted by the record. At the plea hearing, the trial court asked Movant a general question about whether threats or promises had been made to him to cause him to plead guilty. The trial court also inquired whether "anyone made promises about what sentence [Movant] will receive?" Movant responded "no" to both questions. In addition, the trial court discussed the range of punishment and

ensured that Movant understood the precise terms of the plea agreement. The record does not reflect that any of the participants in the plea hearing discussed the issue of timing of parole eligibility.

*Shackleford v. State, supra,* is instructive on the issue of whether the record refutes Movant's allegations. 51 S.W.3d 125. In *Shackleford,* the state argued that the plea record refuted the movant's allegations, because he had given a negative response to routine inquiries. *Id.* at 128. The court disagreed, stating that "[a] negative response to a routine inquiry whether any promises other than stated on the record had been made is too general to encompass all possible statements by counsel to his client." 51 S.W.3d at 128.

We concluded in *Hao, supra,* that where a movant contended his counsel told him he would have to serve eighteen additional months before parole eligibility, but he later learned he was parole-eligible only after sixty months, he was entitled to an evidentiary hearing. 67 S.W.3d 664. As in *Shackleford, supra,* we held that "the allegations are not conclusively refuted by the record, in which no mention is made of parole eligibility and Movant was never asked about any other promises to him." *Id.* Likewise, here, other than general inquiries, the trial court did not elicit any responses from Movant touching upon the issue of parole eligibility. Accordingly, the record is insufficient to refute Movant's allegations.

The third factor we consider in determining whether Movant is entitled to a hearing is whether Movant alleged prejudice. In *Hao,* we concluded that where the movant has "alleged prejudice, claiming that he would not have pleaded guilty if he had known counsel's advice was erroneous ... the motion court clearly erred in denying [the movant's] motion without an evidentiary hearing." 67 S.W.3d 664. See also *Savage v. State,* 114 S.W.3d 455, 458

(Mo.App. E.D.2003). Here, Movant stated in his amended motion that "but for counsel's assurance that he could get paroled as early as the eighteen month point, movant would have rejected pleading guilty and insisted on proceeding to trial." Accordingly, Movant satisfies the third requirement for an evidentiary hearing.

### D. Factual basis for plea.

In Movant's third point, he argues that there was no factual basis to support his plea of guilty for the charge of stealing a motor vehicle because the State did not establish that when Movant received possession of the car, he did not intend to return it. In his fourth point, Movant claims there was no factual basis for his plea of guilty to the charge of domestic assault because the State did not establish that he committed the assault with a dangerous instrument.

 Rule 24.02(e) provides, in pertinent part, a "court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." See also *Franklin v. State,* 989 S.W.2d 678, 679 (Mo.App. E.D.1999). A defendant is not required to admit or recite the facts constituting the offense in a guilty plea proceeding, but must understand the facts recited by the judge or prosecutor at the plea hearing. *Daniels v. State,* 70 S.W.3d 457, 461 (Mo.App.E.D. 2002). To that end, "a defendant . . . should express an awareness of the nature and elements of the charge to which he or she pleads guilty." *Id.* (internal quotation omitted).

The State charged Movant with stealing under Section 570.030,[3] which provides, in pertinent part that: "A person commits the crime of stealing if he or she appropriates property . . . of another with the purpose to deprive him or her thereof, either without his or her consent or by means of

deceit or coercion." Section 570.010(2) defines "appropriate" as "to take, obtain, use, transfer, conceal or *retain possession of.*" (emphasis added.)

Movant contends that the State did not establish that he intended to deprive Ms. Crooks of her vehicle at the time he appropriated it. The record, however, establishes that Movant affirmatively answered the following question: "Do you understand, Mr. Reid, that on that charge by pleading guilty you are admitting that on May 10, 2003, here in Montgomery County that you appropriated a green 1999 Chevrolet Cavalier automobile which was owned by Kelly L. Crooks without Kelly Crooks' consent and *with the purpose to deprive* her of that automobile?" (emphasis added.) In addition, the record establishes that Movant agreed with the following facts: Movant obtained Ms. Crooks' vehicle on May 9 and promised to return it "in a couple of hours," but failed to do so. Thereafter, Movant twice phoned Ms. Crooks, who ordered Movant to return the vehicle both times. However, Movant never returned the car. Thus, Movant's assertion that the State failed to establish the elements of stealing is directly refuted by the record.

 We next address Movant's assertion that there was no factual basis for the guilty plea to the charge of second degree domestic assault because the State failed to establish that the BB gun used in the assault was a dangerous instrument.

 A person commits the crime of domestic assault in the second degree under Section 565.073 "if the act involves a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor . . . and attempts to cause or knowingly causes physical injury to such family or household member by

---

**3.** All statutory references are to RSMo 2000 unless otherwise indicated.

any means, including but not limited to, by use of a deadly weapon or dangerous instrument, or by choking or strangulation ..." See also *State v. Blackburn*, 168 S.W.3d 571, 574 (Mo.App. S.D.2005). Under Section 556.061(9), a "dangerous instrument" is defined as "any instrument, article or substance which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." See also *State v. Burch* 939 S.W.2d 525, 530 (Mo.App. W.D.1997). Serious physical injury, under Section 556.061(28) is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." To determine whether an object is a dangerous instrument, we must analyze whether the instrument is capable of causing serious injury. See *State v. Kobel*, 927 S.W.2d 455, 460 (Mo.App. W.D.1996) (examining the term "dangerous instrument" for purposes of Section 565.060.1(2), second degree assault).

Movant cites *Donelson v. State*, 34 S.W.3d 827 (Mo.App. E.D.2000) in support of his point. In *Donelson*, the movant told the judge that he "attempted to rob [a bank] with a stolen vehicle and a *deadly weapon*." 34 S.W.3d at 829 (emphasis added.) However, the movant did not inform the court that the weapon he was referring to was a BB gun, affirming only that the co-defendant was armed with "some sort of gun." *Id.* We reversed and remanded for an evidentiary hearing because the movant's reference to a "deadly weapon" was insufficient to refute the movant's allegation that the BB gun did not satisfy the definition of "deadly weapon" under Section 556.061(10). *Id.*

*Donelson* is distinguishable from the case at hand. In *Donelson*, we examined whether the information provided to the court was sufficient to uphold a finding that the movant used a "deadly weapon" *Donelson*, 34 S.W.3d at 830. Here, by contrast, we must determine whether there is a factual basis to support the determination that the BB gun was a "dangerous instrument."

The record reflects that Movant acknowledged that the State would prove that: (1) he shot Ms. Jennings with a BB gun that required a CO2 cartridge; and (2) a police officer later observed injuries caused by the BB gun, including that the victim's skin was penetrated by BB's and was bleeding. This information was sufficient for the trial court to determine that the BB gun was a dangerous instrument.

### Conclusion

We reverse and remand for an evidentiary hearing on point two and affirm on the remaining points.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., Concur.