STATE of Missouri, Plaintiff–
Respondent,

v.

Christopher M. ROUSSELO,
Defendant–Appellant.

No. SD 31799.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 13, 2012.

Motion for Rehearing and Transfer
Denied Jan. 3, 2013.

Samuel E. Buffaloe, Jefferson City, MO, for Appellant.

Chris Koster, Atty. Gen., Jessica L. Blome, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, J.

Christopher Rousselo (Defendant) was charged by information with committing the following crimes involving R.E. (Victim): (1) the class B felony of domestic assault in the first degree; (2) the unclassified felony of armed criminal action (ACA); and (3) the class D felony of unlawful use of a weapon. *See* § 565.072; § 571.015 RSMo (2000); § 571.030.[1] After a bench trial, Defendant was convicted of first-degree domestic assault and ACA and acquitted on the weapon charge. On appeal, Defendant challenges the denial of his motion for judgment of acquittal at the close of all of the evidence. First, he contends his conviction for first-degree domestic assault should be reversed because the evidence was insufficient for the trial court to reasonably find that Victim suffered a serious physical injury. Second, he contends his conviction for ACA should be reversed because the evidence was insufficient for the trial court to reasonably find that the ceramic bowl used to strike Victim was a dangerous instrument. Because these contentions lack merit, we affirm.

■■ We apply the same standard of review in this bench-tried case as in a jury-tried case. *State v. Johnson*, 81 S.W.3d 212, 215 (Mo.App.2002). We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense. *State v. Castoe*, 357 S.W.3d 305, 308 (Mo.App.2012). "When reviewing the sufficiency of the evidence, we review all evidence and inferences reasonably drawn from the evidence in the light most favor-

---

1. Unless otherwise specified, all references to statutes are to RSMo Cum.Supp. (2010).

able to the verdict, and disregard all contrary evidence and inferences." *State v. Berry*, 54 S.W.3d 668, 675 (Mo.App.2001). "The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness." *State v. Warren*, 141 S.W.3d 478, 490 (Mo.App.2004). Our function is not to reweigh the evidence, but only to determine whether the conviction is supported by sufficient evidence. *State v. Mann*, 129 S.W.3d 462, 467 (Mo.App.2004). Viewing the record from that perspective, the following evidence was presented at trial.

Victim was a shift supervisor at the KFC restaurant in Hollister. Defendant was Victim's ex-husband. On the evening of May 24, 2011, Victim was at Defendant's apartment picking up some of her belongings. Defendant and Victim began arguing over a case involving their daughter. Defendant was holding a ceramic bowl in his hand. As the argument grew more intense, Victim turned around to get a box. Defendant raised the bowl and slammed it down on Victim's head. Victim fell to the ground. Defendant then grabbed Victim from behind and placed his hands over her nose and mouth, cutting off her ability to breathe. While Defendant was doing this, he kept repeating that he would kill Victim unless she told everyone that Defendant did not molest their daughter. Victim begged for her life and told Defendant that their daughter needed parents. Defendant then let Victim go. She had blood gushing from her head, and she was so disoriented that she could not drive. Defendant told Victim to take him to the police station "because he was going to jail anyway."

Victim ran out the door and called a friend, who picked Victim up and took her to KFC. Once there, Victim called the police. Next, she called an ambulance and was taken to the hospital. Victim had a wound on the back of her head that was four to five inches in length. Four staples were needed to close the wound. She also had bruising on her arms and around her mouth.

Officer Flowers of the Hollister Police Department saw Victim at KFC and observed that her head looked like it had been cut with a knife. Officer Flowers went to the apartment complex, found Defendant and placed him under arrest. Inside Defendant's apartment, Officer Flowers found a ceramic bowl that had been broken in half. He saw a pool of blood on the linoleum, blood on the carpet, blood on the box springs and mattress, and blood on a comforter.

During Defendant's direct examination at trial, he admitted that he hit Victim in the back of the head with the ceramic bowl:

Q   Now, you don't deny that there was some pretty—there was some pretty serious injury there?

A   Yes. I don't deny. I accept full responsibility of the bowl hitting [Victim] in the back of the head. That's true.

After Victim left the apartment, Defendant changed his bloody shirt and waited for police to arrive. Additional facts necessary to the disposition of the case are included below as we address Defendant's two points of error.

█   In Point I, Defendant argues that he was entitled to a judgment of acquittal with respect to the first-degree domestic assault charge. According to Defendant, there was insufficient evidence from which the court reasonably could have found that Victim suffered a serious physical injury.

The underlying premise of the argument is that Defendant could not be found guilty of committing the class B felony of first-degree domestic assault absent proof Victim sustained a serious physical injury.

Defendant was charged with a violation of § 565.072. An examination of that statute makes it clear that there are multiple ways in which this crime can be committed:

1. A person commits the crime of domestic assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor, as defined in section 455.010, RSMo.

2. Domestic assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim or has previously pleaded guilty to or been found guilty of committing this crime, in which case it is a class A felony.

*Id.* If the victim sustains serious physical injury during the assault, the crime becomes a class A felony. *Id.*

One method of committing this offense is to *attempt* to cause serious physical injury to a family or household member. *Id.;* MAI–CR 3d 319.73. It is well settled that a person attempts to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. § 564.011.1 RSMo (2000); *State v. Whalen,* 49 S.W.3d 181, 186 (Mo. banc 2001). In relevant part, Count I of the information alleged that:

[Defendant], in violation of Section 565.072, RSMo, committed the class B felony of domestic assault in the first degree . . . in that on or about May 24, 2011 . . . [Defendant] struck [Victim] on the head with a ceramic bowl, and such conduct was a substantial step toward the commission of the crime of attempting to cause serious physical injury to [Victim], and was done for the purpose of committing such assault, and [Victim] and [Defendant] were family or household members in that [Victim] and [Defendant] are adults who have a child in common. . . .

■■■ Defendant's assertion that he could not be found guilty of the class B felony of first-degree domestic assault absent proof that Victim sustained serious physical injury is simply incorrect. As the text of MAI–CR 3d 319.73 and the accompanying Notes on Use make clear, proof of serious physical injury to the victim is only required when the defendant is charged with a class A felony. Paragraph Second of that instruction states "that defendant in the course of such conduct caused serious physical injury to [*Identify victim* ]. . . ." MAI–CR 3d 319.73 (italics in original). Notes on Use 5 states:

This instruction submits the class A felony of domestic assault in the first degree by an attempt to kill or cause serious physical injury in the course of which serious physical injury was inflicted upon the victim. To submit the offense of domestic assault in the first degree as a class B felony, *omit paragraph Second* and renumber paragraphs Third and Fourth and change "submitted in paragraph Third" to "submitted in paragraph Second." The definition of "serious physical injury" will be used only if that term is used in the instruction.

*Id.* (italics added). Thus, proof of serious physical injury is not required to support a conviction for the class B felony of first-degree domestic assault.

We find additional support for this conclusion by examining the more general first-degree assault statute, which also proscribes an attempt to cause serious physical injury to another person. Section 565.050 RSMo (2000) states:

> 1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.
>
> 2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

*Id.* As the eastern district of this Court pointed out in *State v. Greer*, 348 S.W.3d 149 (Mo.App.2011):

> [T]he defendant's argument that the evidence created a question as to whether the injuries suffered by the officers constituted "serious physical injury" is flawed. The State charged the defendant in each of the three first-degree assault counts with attempting to kill or to cause serious physical injury, and the verdict director so instructed the jury. Therefore, it is immaterial that the defendant might not have succeeded in inflicting "serious physical injury" on any of the officers.

*Id.* at 156; *see also State v. White*, 798 S.W.2d 694, 697–98 (Mo. banc 1990) (affirming the defendant's conviction for first-degree assault pursuant to § 565.050 because the evidence supported a finding that the defendant attempted to cause serious physical injury, "and that the victim suffered no serious physical injury is relevant only in deciding punishment"). These principles apply with equal force in this court-tried case to our review of the trial court's denial of Defendant's motion for judgment of acquittal. Because that ruling was correct, Point I is denied.

In Point II, Defendant argues that he was entitled to a judgment of acquittal with respect to the ACA charge. The crime of ACA proscribes the commission of "any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon...." § 571.015.1 RSMo (2000). Defendant was convicted of the class B felony of first-degree domestic assault. Count II of the information alleged that Defendant committed that crime by using a dangerous instrument in the form of the ceramic bowl. Defendant claims the ceramic bowl was not a dangerous instrument because his act of striking Victim with the ceramic bowl did not actually cause serious physical injury to her. Once again, that argument is misdirected.

■ A "[d]angerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" § 556.061(9). "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" § 556.061(28).[2] "Unlike a deadly weapon, a dangerous instru-

---

2. "Physical injury" is further defined as "physical pain, illness, or any impairment of physical condition[.]" § 556.061(20).

ment is not designed for use as a weapon and may have a normal function under ordinary circumstances." *State v. Williams,* 126 S.W.3d 377, 384 (Mo. banc 2004). The key consideration is whether the ceramic bowl was readily capable of causing death or serious physical injury under the circumstances in which it was used. *See State v. Arnold,* 216 S.W.3d 203, 208–09 (Mo.App.2007); *Reid v. State,* 192 S.W.3d 727, 735 (Mo.App.2006); *State v. Carpenter,* 72 S.W.3d 281, 283 (Mo.App. 2002).

■ Defendant struck Victim in the back of the head with the ceramic bowl so hard that the bowl broke in half. That blow caused a four-to-five-inch cut on the back of Victim's head that took four staples to close. The wound bled profusely. The impact was so forceful that Victim was disoriented and unable to drive away from the scene in her own vehicle. Moreover, our inquiry is not solely restricted to an examination of the injuries Victim actually sustained during the assault. *See State v. Eoff,* 193 S.W.3d 366, 374 (Mo.App.2006); *State v. Terrell,* 751 S.W.2d 394, 395 (Mo. App.1988) (noting that it is irrelevant whether the victim actually suffered serious physical injury because the pertinent inquiry is what injuries the alleged dangerous instrument is readily capable of causing under the circumstances in which it is

used). A ceramic bowl used to strike someone's head is readily capable of causing a severe laceration, a broken nose, eye injuries, loss of teeth, etc. As the *Terrell* court noted, "[a] beer bottle is ordinarily a harmless object, but when wielded as a bludgeon upon a human being it becomes a dangerous instrument capable of causing serious physical injury or death." *Terrell,* 751 S.W.2d at 395.[3] Thus, the ceramic bowl used to strike Victim was a dangerous instrument within the meaning of § 556.061(9). Our holding is consistent with prior decisions finding a number of seemingly innocuous objects to be dangerous instruments under the circumstances in which they were used. *See, e.g., Arnold,* 216 S.W.3d at 208–09 (ink pen held to guard's throat during an escape attempt); *Carpenter,* 72 S.W.3d at 283–84 (handcuffs used to strike an officer's face); *State v. Burch,* 939 S.W.2d 525, 530 (Mo. App.1997) (co-defendant's elbow used to strike victim's head and neck). Point II is denied.

The judgment of the trial court is affirmed.

DANIEL E. SCOTT, P.J., and DON E. BURRELL, C.J., concur.

---

**3.** The *Terrell* court relied upon *State v. Hacker,* 214 S.W.2d 413, 415 (Mo. banc 1948), and *State v. Goodman,* 496 S.W.2d 850, 852 n. 1 (Mo. banc 1973), to support this conclusion. *Terrell,* 751 S.W.2d at 395. In *Hacker,* our Supreme Court affirmed the defendant's conviction for assault with intent to kill. The defendant had used a whiskey bottle to strike the victim on the temple. Using the same type of functional analysis now employed to determine whether an object is a dangerous instrument, our Supreme Court decided that "[a] finding was warranted that the whiskey bottle constituted a deadly weapon when used

in the manner established by the State's evidence." *Hacker,* 214 S.W.2d at 414–15. The *Goodman* court used the same type of functional analysis in affirming the defendant's conviction for assault with intent to do great bodily harm. The defendant had used a champagne bottle to strike the victim two or three times in the face. Our Supreme Court stated that "[a] champagne bottle, like a whiskey bottle, *State v. Hacker,* 214 S.W.2d 413, 415(2) (Mo.1948), when used in the manner shown by the State, may constitute a deadly weapon." *Goodman,* 496 S.W.2d at 852 n. 1.