Gregory Wayne HICKS,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 17612.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 28, 1992.

Motion for Rehearing or Transfer to
Supreme Court Denied
Feb. 20, 1992.

Application to Transfer Denied
March 24, 1992.

Robert L. Fleming, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., Robert A. Kelly, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

SHRUM, Presiding Judge.

The movant Gregory Wayne Hicks appeals the denial of his Rule 24.035 motion following an evidentiary hearing. The state has filed a motion to dismiss the appeal based on the "escape rule."

## ISSUE

At issue is whether it is appropriate to invoke the escape rule and dismiss the movant's appeal where the movant knowingly violated the terms of his supervised probation by going to Colorado without his probation officer's permission. We conclude the escape rule does apply, and we dismiss the appeal.

## FACTS

On June 23, 1989, the movant pled guilty to the following charges and received the sentences indicated: two counts of passing bad checks, each a class D felony (§ 570.-120.6(2), RSMo 1986) (five years on each count); forgery, a class C felony (§ 570.-090.1(4), RSMo 1986) (seven years); and statutory rape, a class B felony (§ 566.-030.3, RSMo 1986) (six years). The sentences were ordered to be served consecutively. Execution of sentence was suspended on all charges, and the defendant was placed on five years' supervised probation. As a part of the plea arrangement, the state dismissed five misdemeanor charges.[1]

In early December 1989, the movant failed to report to his probation officer.

---

1. At the sentencing hearing, the trial court noted that the movant was already on probation fol- lowing his guilty pleas to charges in Morgan, Miller, and Camden counties.

Shortly thereafter, the probation officer reported to the trial court that the movant had "absconded," and the court issued a capias warrant. Later, the movant was arrested in Colorado where he had gone without receiving permission from his probation officer.

At a March 27, 1990, hearing, the trial court revoked the movant's probation on the June 23, 1989, convictions and ordered the previously imposed sentences executed. At the revocation hearing, the trial court stated:

> You were put on specific terms of probation, and you knew what the terms of that probation were.... You knew what the situation was and that you had all of these sentences hanging over your head and then go out and you violate the terms of your probation. And you don't violate it in just one respect; I end up with a violation report that has eight or nine alleged violations that you admit, and absolutely one of the worst things that you could do on probation is abscond, because if you don't report into the probation officer, the probation officer cannot supervise you and then probation is totally worthless.
>
> .... Now, you knew better than to take off to Colorado without any permission from your probation officer.... You are not going to dictate to this court what you are going to do and not dictate to the probation officer where you are going to live.
>
> ....
>
> The court is perfectly aware of what happened in Colorado when the warrants came through and on the extradition. This is a situation where you fought this court and fought the probation officer, and you are not willing to work with us....

The movant was committed to the department of corrections. On June 12, 1990, he filed a pro se Rule 24.035 motion. Appointed counsel amended the pro se motion, and a hearing was held. The transcript of the Rule 24.035 motion hearing supports the conclusion that the movant knew he would be violating the terms of his probation if he went to Colorado without his probation officer's permission and that he, nevertheless, *willfully went to Colorado without permission.* The motion court denied relief to the movant.[2] This appeal followed.

## DISCUSSION

█ The first reported Missouri appellate court opinion to apply the escape rule was *State v. Carter,* 98 Mo. 431, 11 S.W. 979 (1889), in which the supreme court dismissed the appeal of one convicted of murder who escaped custody pending appeal and remained at large. The escape rule is recognized, in one form or another, by most courts, including the United States Supreme Court. *See State v. Kearns,* 743 S.W.2d 553, 554 (Mo.App.1987), and cases cited therein. In the years since *Carter,* Missouri appellate courts have expanded the rule by invoking it in cases other than appeals on the merits of the convictions of persons who have escaped from custody and remain at large.

Thus the rule has been applied to deny the right of appeal to one who, after the jury returned a guilty verdict but before sentencing, absented himself from the courtroom without permission, *State v. Thomas,* 792 S.W.2d 66 (Mo.App.1990), or one who fled the courtroom after entering a guilty plea but prior to imposition of sentence. *Rulo v. State,* 804 S.W.2d 866 (Mo.App.1991). The rule has been applied to deny the right of appeal to one who, following conviction and free pending sentencing, willfully failed to appear for sentencing. *State v. Woods,* 812 S.W.2d 267, 268 (Mo.App.1991); *State v. Gillispie,* 790 S.W.2d 519 (Mo.App.1990).

Unlike the situation in *Carter,* in which the defendant remained at large, the rule now applies even though a defendant has been returned to custody. *State v. Schleeper,* 806 S.W.2d 459, 460 (Mo.App.

---

**2.** The state did not seek dismissal by the motion court of the movant's Rule 24.035 motion based on the "escape rule." The motion court denied the movant relief based on the merits of the claims in his rule 24.035 motion and issued findings of fact and conclusions of law.

1991); *State v. Wright*, 763 S.W.2d 167, 168 (Mo.App.1988); *Kearns*, 743 S.W.2d at 554.

■ Applicability of the escape rule is not limited to dismissal of appeals on the merits but also to motions for postconviction relief under Rules 29.15 (*Woods*, 812 S.W.2d at 268; *State v. Branch*, 811 S.W.2d 11, 12 (Mo.App.1991); *Stradford v. State*, 787 S.W.2d 832, 833 (Mo.App.1990)), and Rule 24.035. *Rulo*, 804 S.W.2d at 867. As with direct appeals on the merits, the rule is applicable in Rule 24.035 and 29.15 cases even though the movant has been restored to custody. *Schleeper*, 806 S.W.2d 459. *See also White v. State*, 558 S.W.2d 372 (Mo.App.1977) (movant attended first day of trial, failed to appear on second day of trial, was convicted *in absentia;* court of appeals stated he had "relinquishe[d] his right of appeal"). Moreover, this court suggested in *Sinclair v. State*, 708 S.W.2d 333 (Mo.App.1986), that an *attempted* escape that "substantially hindered the trial court's determination" might provide grounds for summary disposition under Rule 27.26 (repealed). 708 S.W.2d at 336.

In postconviction relief situations, the escape rule has been invoked to dismiss appeals where the motion court has dealt with the merits of the movant's claims, *see, e.g., Woods*, 812 S.W.2d 267; *Branch*, 811 S.W.2d 11; *Thomas*, 792 S.W.2d 66, or to affirm the motion court's judgment where it has dismissed the motion based on its application of the escape rule. *See, e.g., Rulo*, 804 S.W.2d 866; *Stradford*, 787 S.W.2d 832. The case before us stands in the former posture.

The escape rule finds support in various rationales; *Wright*, 763 S.W.2d 167, and *Kearns*, 743 S.W.2d 553, provide thorough treatment. For example, the rule can be justified by the need for a court to retain control over a defendant. *Wright*, 763 S.W.2d at 168 and *Kearns*, 743 S.W.2d at 554. "Without such control the defendant 'places himself in a position to speculate on the chances of [sic] reversal, meanwhile keeping out of the reach of justice, and prepared to render the judgment of rever-

sal nugatory or not, at his option.' " *Wright*, 763 S.W.2d at 168, *quoting Carter*, 11 S.W. at 980.

As the court noted in *Wright*, once the defendant is restored to custody, the requirement of court control over the defendant is not applicable. 763 S.W.2d at 168. However, other reasons justify broader application of the escape rule. An escape shows contempt for the authority of the court, *Carter*, 11 S.W. at 980, and for the judicial process. *Kearns*, 743 S.W.2d at 554. The escape rule thus preserves respect for our judicial system. *Wright*, 763 S.W.2d at 168. "Those who seek the protection of this legal system must, however, be willing to abide by its rules and decisions.... [A defendant] may not selectively abide by the decisions of the courts." *Id.* at 168–69.

Other reasons that justify the escape rule include prevention of administrative problems for courts, prevention of prejudice to the state in the event of remand, discouragement of escape, and encouragement of surrender. *Wright*, 763 S.W.2d at 168–69; *Kearns*, 743 S.W.2d at 554–55.

■ To apply the escape rule to the case before us is not only logical but also justified by the various policies that underlie the rule. Release of a convicted defendant on probation is a matter of grace, and his acceptance subjects him to the conditions of his probation. *State v. Brantley*, 353 S.W.2d 793, 796–97 (Mo.1962). The movant now before us was the beneficiary of abundant grace; the trial court suspended his consecutive sentences totaling 23 years and placed him on five years' supervised probation. Grace notwithstanding, the movant knowingly violated the terms of his probation by absconding to Colorado. He attempted to place himself beyond the control of the department of corrections and demonstrated his contempt for the very system of justice that granted him probation in lieu of incarceration. Although the movant was returned to custody, that return apparently was involuntary on his part.

We find no Missouri appellate court opinion that applies the escape rule to deny relief to one who knowingly violates the

terms of his probation by absconding; nevertheless, such application is not novel. *See, e.g., State v. Johnson*, 105 Wash.2d 92, 711 P.2d 1017 (banc 1986).

Appeal dismissed.[3]

MAUS and MONTGOMERY, JJ., concur.

**3.** From our *ex gratia* review of the motion court's judgment, we conclude the findings of fact are not clearly erroneous, no error of law appears, and an opinion would have no prece- dential value. Thus, were we not dismissing the appeal, we would affirm pursuant to Rule 84.-16(b)(2) and (5).