**Douglas D. HOLMES., Jr., Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. WD 60878.**

Missouri Court of Appeals,
Western District.

Oct. 22, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 26, 2002.

Application for Transfer Denied
Jan. 28, 2003.

---

Susan L. Hogan, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, P.J., LOWENSTEIN and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

Douglas Holmes appeals from the denial, without an evidentiary hearing, of his post-conviction motion under Rule 29.15. The underlying facts are as follows: The State charged Holmes with three counts of robbery in the first degree, § 569.020,[1] and three counts of armed criminal action, § 571.015. Holmes waived his right to a jury trial. After the State presented its case, Holmes' attorney requested, and was granted, a brief recess to consult with his client. During the recess, Holmes pocketed the money he was alleged to have stolen from his victims, which had been received in evidence, and fled the courthouse. When the court reconvened, Holmes' counsel informed the court, "For the record, the defendant rests." Counsel then explained to the court that Holmes had fled with the evidence. Holmes was convicted *in absentia.* A *capias* was issued, and three weeks later Holmes was apprehended and sentenced. During sentencing, the trial court noted that Holmes' actions obviated a meaningful pre-sentence investigation.

Holmes filed an action seeking post-conviction relief under Rule 29.15, alleging ineffective assistance of counsel. The motion was denied. On appeal, Holmes argues that the motion court clearly erred in denying his motion because counsel failed to object to the introduction of tainted testimony by two witnesses for the State and because counsel ineffectively informed him of his right to a jury trial. Because of Holmes' escape from justice, aggravated

by theft of evidence from the court, his appeal is dismissed.

■■■ Under the escape rule, an appellate court may dismiss an appeal where the appellant has attempted to escape justice—for instance, by absconding from the courtroom. *See State v. Troupe,* 891 S.W.2d 808, 809 (Mo. banc 1995). Traditionally, the rule bars the appeal of a defendant who has fled from justice during the pendency of appeal, *See State v. Carter,* 98 Mo. 431, 11 S.W. 979, 979 (1889), but it has also been invoked where flight occurs before conviction. *Troupe,* 891 S.W.2d at 809 (defendant present for closing arguments but absent from courtroom when jury returned guilty verdict); *State v. Buff,* 34 S.W.3d 856, 856–57 (Mo.App. 2000); *State v. Gilmore,* 727 S.W.2d 469, 469 (Mo.App.1987). *See also United States v. London,* 723 F.2d 1538, 1539 (11th Cir.1984).

The escape rule is applicable where the appeal is from the denial of a motion for postconviction relief under Rule 29.15. *See, e.g., Troupe,* 891 S.W.2d at 809; *Stelljes v. State,* 72 S.W.3d 196, 199 (Mo.App. 2002); *Stradford v. State,* 787 S.W.2d 832, 833 (Mo.App.1990). As the eastern district has noted, "[I]t seems logical that a principle of law which would deprive an escapee of the right to appeal a possibly legitimate issue would also serve to deprive him of the right to challenge his counsel's performance at trial." *Stradford,* 787 S.W.2d at 833. In other words, because there is no constitutional hierarchy of rights, *See Caplin & Drysdale, Chartered v. U.S.,* 491 U.S. 617, 628, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (rejecting claim that Sixth Amendment trumps requirement that Fifth Amendment taking be compensated, denying contention that Sixth Amendment interests of defendant trumps other consti-

---

1. All statutory references are to RSMo 1994.

tutional values); *Suhre v. Haywood County*, 131 F.3d 1083, 1085 (4th Cir.1997) ("Constitution establishes no hierarchy of constitutional rights[.]"), if the escape rule may bar an appeal alleging a Fourth Amendment violation, then, *ipso facto*, it may also bar an appeal alleging any other constitutional deprivation, including a claim of ineffective assistance of counsel.

In *Troupe, supra,* the direct appeal and the denial of post-conviction relief were consolidated. There, the court, in dismissing the appeal, said: "In applying the escape rule, the relevant inquiry is whether the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the *sound discretion* of the appellate tribunal." 891 S.W.2d at 811 (emphasis added).

Exercising our discretion, this court find dismissal of Holmes' appeal is warranted. The facts here are similar to those in *State v. Gilmore, supra,* where the eastern district dismissed the direct appeal of a defendant who, free on bond, failed to return to the courtroom and was convicted *in absentia.* Although the defendant in *Gilmore* was absent for over ten years, as opposed to the three weeks here, it is most significant that Holmes had the additional effrontery to again seize his ill-gotten gains.

■ There is no threshold amount of time an appellant must have escaped justice before dismissal is allowed. Flights justifying dismissal have ranged from ten-and-one-half years, *Gilmore,* 727 S.W.2d at 469, to fifteen days, *State v. Janson,* 964 S.W.2d 552, 554 (Mo.App.1998).[2] Three weeks—the time Holmes was absent—falls

toward the lower end of the scale, but still within an acceptable range.

■ In deciding whether dismissal is warranted, an appellate court should look to the eight rationales for the escape rule, to wit:

> (1) the need for a court to have control over the defendant before making a decision on appeal; (2) curtailment of administrative problems caused by the defendant's [] absence; (3) preventing prejudice to the state in the event of remand for a new trial; (4) preventing defendants from selectively abiding by court decisions; (5) discouraging escape; . . . (6) encouraging voluntary surrender[;] . . . (7) preserving respect for the criminal justice system; and (8) promoting the dignified operation of the appellate courts.

*See State v. Brown,* 974 S.W.2d 630, 632 (Mo.App.1998).

Because Holmes has been under state supervision throughout his appeal, factor (1) is not applicable. The remaining seven factors all indicate Holmes' appeal should be dismissed. Holmes' absence, as the trial court indicated, prevented a meaningful pre-sentence investigation—that is, created administrative problems for the court. There is no indication that should this court reverse the trial court, on the grounds of ineffective assistance of counsel, the State would have problems retrying Holmes, nor does the state argue it would. Dismissing Holmes' appeal would discourage escape and prevent other like-minded defendants from selectively abiding by court decisions. It would preserve respect for the criminal justice system,

---

**2.** For a summary of the range of flight periods, *see State v. Hickerson,* 66 S.W.3d 787, 789 (Mo.App.2002).

which had to expend law-enforcement time and money to track Holmes down.

 It would be remiss for this court to ignore the manner in which Holmes escaped. Arguably, the manner of escape should be a ninth factor in the dismissal calculus (though, perhaps, it falls under factors (6) and (7)). It is one thing to fail to return to the courtroom after a recess has expired. It is quite another for a fleeing defendant to spirit away evidence of his guilt, and especially reprehensible when the evidence is the lucre the defendant is charged with stealing. Where an appellant obstructs justice as part of his flight—e.g., by depriving a court of evidence—dismissal under the escape rule is especially warranted.

Holmes' appeal is dismissed.[3]

All concur.

---

**3.** *Ex gratia,* this court notes that Holmes' appeal, alleging ineffective assistance of counsel, was meritless. He alleges that he was inadequately informed by counsel of his right to a jury trial; however, the trial judge asked Holmes whether he discussed waiver of his right to a jury trial, to which Holmes' responded that he had and that he wished to have a bench trial. Holmes was in no way harmed by counsel's (alleged) failure. Holmes contention that he was denied effective assistance of counsel because counsel failed to object to the testimony of two state witnesses who, supposedly, made their inculpatory identifications of Holmes as a result of a suggestive police procedure—the police allowed the witnesses to listen to the police radio as the officers chased and caught Holmes—is also unpersuasive. Three other witnesses identified Holmes, including a Certified Fingerprint Examiner who testified she found his fingerprints on a gun found at the crime scene. Assuming the error was unduly suggestive, a questionable proposition, this court sees no reasonable probability that, but for counsel's ineffectiveness, the result would have been different, and hence Holmes' point fails. *See Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to succeed on ineffective assistance of counsel claim, appellant must prove prejudice, a reasonable probability that result of trial would have been different had counsel not been ineffective).