**J. Damon PRADT, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 28008.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 27, 2007.

J. Gregory Mermelstein, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

J. Damon Pradt (Pradt) appeals from an order denying his amended Rule 24.035 motion for post-conviction relief without an evidentiary hearing.[1]  Because Pradt fled

---

1.  All references to rules are to Missouri Court Rules (2007).  All references to statutes are to RSMo (1994) unless otherwise specified.

the state and absconded from his probation for nearly three months, we apply the escape rule and dismiss his appeal.

In April 2002, Pradt was charged by information with committing the class B felony of robbery in the second degree in July 1999. *See* § 569.030. Pursuant to a plea agreement, Pradt was subsequently charged by amended information with the class D felony of attempted stealing. *See* § 564.011; § 570.030.3(2) RSMo Cum. Supp. (1998). In July 1999, the range of punishment for this offense was imprisonment in the department of corrections for a term not to exceed five years. § 558.011 RSMo Cum.Supp. (1998). In exchange for a plea to the reduced charge, the State agreed not to oppose a recommendation that Pradt be placed on supervised probation for five years.

On March 28, 2003, Pradt pled guilty to the attempted stealing offense. After finding Pradt's plea to be freely, voluntarily and intelligently given, the plea court followed the plea agreement and sentenced Pradt to five years imprisonment. Execution of this sentence was suspended, and Pradt was placed on supervised probation for five years. At that time, Pradt was also on parole in Texas and had a residence there. When the plea hearing ended, plea counsel informed the court that Pradt would be in Missouri until his supervised probation was established, but he planned on moving back to Texas to complete his probation through the interstate compact for the supervision of parolees and probationers. *See* § 217.810. The terms of Pradt's supervised probation in Missouri included requirements that he regularly report to his probation officer and that he obtain advance permission before changing residency.

On March 31, 2003, Pradt was issued a 30–day travel permit by Missouri Probation and Parole. This permit authorized Pradt to travel by bus that day to his residence in Texas and return to Missouri no later than April 30, 2003. On April 7, 2003, Missouri Probation Officer Stephanie Whitescarver (Whitescarver) called Pradt's residence in Texas and left a message for him to contact her immediately to receive reporting instructions. On April 8, 2003, Texas Parole Officer Sharite Roberson (Roberson) conducted a home visit at Pradt's residence. Pradt was not there, so Roberson left a card requiring Pradt to report to Roberson on April 9, 2003. On April 12, 2003, Roberson received a call from Pradt's brother-in-law, who said Pradt was still in Missouri and could be reached by telephone there. When Roberson called that number, however, she was told that Pradt was no longer there and his whereabouts were unknown.

On April 18, 2003, Whitescarver filed a probation violation report declaring Pradt to be an absconder because his whereabouts were unknown, despite several attempts by both her and Roberson to locate Pradt.[2] Whitescarver requested the issuance of a *capias* warrant for Pradt's arrest. The court did so that same day.

In May 2003, the State filed a motion to revoke Pradt's probation and toll the probation period. In July 2003, Whitescarver filed a supplemental violation report stating that she had been unable to locate Pradt for the past 90 days and recommending that his supervision be suspended. In August 2003, the State filed another motion to revoke Pradt's probation and toll the probation period.

---

**2.** Whitescarver's report cited Pradt for violating probation condition Nos. 3 and 8. The former required Pradt to obtain advance permission before changing residency. The latter required Pradt to report to his Texas parole officer and Missouri probation officer.

After a warrant had been issued for Pradt's arrest in Texas, he surrendered to the authorities. On September 8, 2003, Pradt appeared for a parole violation hearing. The hearing officer determined that Pradt did not violate the conditions of his parole based on his testimony that he was not given a copy of the Texas Interstate Compact Reporting Instructions requiring him to report to Roberson.

On September 29, 2003, Pradt was returned to Missouri pursuant to the *capias* warrant. In November 2003, a probation violation hearing was held. Pradt was continued on probation. Because he had no Missouri residence, he was required to live at the Victory Mission in Springfield. Pradt was required to report to his probation officer on a weekly basis.

On January 8, 2004, a second probation violation report was filed. Pradt's probation officer learned that Pradt had left the Victory Mission on December 5, 2003, and had not reported as required. Another *capias* warrant was issued for Pradt's arrest. On February 27, 2004, Pradt was returned to Missouri pursuant to the second *capias* warrant.

On March 19, 2004, the court held another probation violation hearing. At the outset of the hearing, Pradt was placed under oath and admitted that: (1) he failed to live at the Victory Mission as ordered; (2) he failed to report as directed; and (3) he failed to report a change in residency. Later in the hearing, Pradt testified on his own behalf and gave three reasons why he left. First, as a member of the Native American church, he did not want to stay in a Christian facility like the Victory Mission. Second, he couldn't find a job. Third, he was robbed and beaten two blocks away from that facility. After the occurrence of this last event, however, Pradt did not seek medical treatment or call the Springfield police to report the robbery. Instead, he had someone take him to a Native American reservation in Nebraska. While there, Pradt traveled to a casino in Iowa and was arrested for operating a vehicle under the influence of alcohol. It was this arrest that led to his extradition back to Missouri. The trial court did not accept Pradt's explanation for why he violated the conditions of his probation. As the court explained:

> You know, when I told him to go to the Victory Mission, that was the plan that was suggested. There was no opposition given to me at the time. He didn't have anywhere else to live here. I never heard any complaints about it, I never got a request to change his conditions of probation. He just took off because he was unhappy with what I ordered. And he's not amenable to supervision, and he won't be because he thinks that we're mistreating him and he's not going to follow my orders. He's just going to do what he thinks is appropriate.

Accordingly, the court ordered that Pradt's probation be revoked and that his five-year sentence in the department of corrections be executed.

In May 2004, Pradt filed a *pro se* motion for post-conviction relief under Rule 24.035. Counsel was appointed, and an amended motion was filed in October 2004. This motion alleged, *inter alia*, that: (1) Pradt's guilty plea was accepted without a factual basis as required by Rule 24.02(e); and (2) Pradt received ineffective assistance of plea counsel because he entered his guilty plea under the false impression that he would be able to serve his probation in Texas. In August 2006, the amended motion was denied without an evidentiary hearing. Insofar as relevant here, the motion court ruled that the transcript of the guilty plea hearing refuted Pradt's allegations.

On appeal, Pradt presents three points challenging the motion court's ruling. The State, however, requests that we dismiss Pradt's appeal pursuant to the escape rule. "The escape rule is a judicially-created doctrine that operates to deny the right of appeal to a criminal defendant who escapes justice." *Crawley v. State*, 155 S.W.3d 836, 837 (Mo.App.2005). This rule applies to appeals arising from the disposition of Rule 29.15 and Rule 24.035 motions as well as direct appeals. *Pargo v. State*, 191 S.W.3d 693, 698 (Mo.App.2006); *Wagner v. State*, 172 S.W.3d 922, 924 (Mo.App. 2005); *Nichols v. State*, 131 S.W.3d 863, 865 (Mo.App.2004). It is important to note, however, that "[t]he escape rule is applicable to those errors occurring before and up to the escape." *Crawley*, 155 S.W.3d at 837. Both of the claims contained in Pradt's post-conviction motion involved matters that preceded Pradt's decision to abscond while on probation. Therefore, if the escape rule applies, it would bar his appeal. *See Hicks v. State*, 824 S.W.2d 132, 134–35 (Mo.App.1992).

Barring the appeal of an escaping defendant has been justified on a number of different grounds: (1) the need for a court to have control over the defendant before making a decision on appeal; (2) curtailment of administrative problems caused by the defendant's long absence; (3) preventing prejudice to the State in the event of remand for a new trial; (4) preventing the defendant from selectively abiding by court decisions; (5) discouraging escape; (6) encouraging voluntary surrender; (7) preserving respect for the criminal justice system; and (8) promoting the dignified operation of the appellate courts. *State v. Brown*, 974 S.W.2d 630, 632 (Mo.App.1998). Missouri does not follow a *per se* dismissal rule in the event of a defendant's escape. *State v. Surritte*, 35 S.W.3d 873, 875 (Mo.App.2001). Whether to dismiss an appeal for this reason is left to the sound discretion of the appellate tribunal. *State v. Troupe*, 891 S.W.2d 808, 811 (Mo. banc 1995); *Crawley*, 155 S.W.3d at 837. "There is no threshold amount of time an appellant must have escaped justice before dismissal is allowed." *Holmes v. State*, 92 S.W.3d 193, 196 (Mo.App.2002). "The relevant inquiry in determining whether to apply the escape rule is deciding whether the escape adversely affected the criminal justice system." *Smith v. State*, 174 S.W.3d 74, 75 (Mo.App.2005).

In the exercise of our sound discretion, we conclude that the fourth, fifth, sixth and seventh justifications for the escape rule apply in the case at bar. By violating the conditions of probation, Pradt intentionally chose to disobey the trial court. His flight from the state constituted an escape. He had to be returned to Missouri after being arrested in another state. His actions show disrespect for the courts and our system of justice. As this Court explained in *Hicks v. State*, 824 S.W.2d 132 (Mo.App.1992):

> Release of a convicted defendant on probation is a matter of grace, and his acceptance subjects him to the conditions of his probation .... Grace notwithstanding, the movant knowingly violated the terms of his probation by absconding [out of state]. He attempted to place himself beyond the control of the department of corrections and demonstrated his contempt for the very system of justice that granted him probation in lieu of incarceration.

*Id.* at 134. Therefore, Pradt's decision to abscond while on probation did adversely affect the criminal justice system, and his appeal should be dismissed. *See Surritte*, 35 S.W.3d at 875; *Gray v. State*, 976 S.W.2d 646, 647 (Mo.App.1998); *Hicks*, 824 S.W.2d at 134–35.

Pradt argues that we should not apply the escape rule because he never should have been required to return to Missouri and live at the Victory Mission. We have considered this argument, but we find it irrelevant and unpersuasive. Pradt's travel pass only allowed him to remain out of the state of Missouri until April 30, 2003. He did not return by that date. He also remained out of communication with his probation officer. Pradt's return to the state was compelled via a *capias* warrant in late September 2003 after an absence of approximately six months. In any event, this first delict was treated quite leniently by the trial court. Pradt was continued on probation and given a second chance to comply with the court's requirements. Even if Pradt was beaten and robbed as he said, that event did not absolve him of his responsibility to comply with the terms of his probation. *See Crawley v. State*, 155 S.W.3d 836, 838 (Mo.App.2005) (defendant's hospitalization, after which he remained at large, was arrested in Georgia and extradited back to Missouri, provided insufficient grounds to avoid application of escape rule). It was Pradt's second, deliberate decision to abscond while on probation that resulted in his eventual imprisonment. During this second escapade, he remained at large for nearly three months. Once again, he had to be arrested and extradited to ensure his return to this state. These circumstances warrant the conclusion that Pradt's escape was willful and did adversely affect the criminal justice system. *See Crawley*, 155 S.W.3d at 838. "Those who seek protection from the legal system ... must be willing to abide by all the rules and decisions of that legal system." *Harvey v. State*, 150 S.W.3d 128, 130 (Mo.App.2004).

Application of the escape rule does not violate Pradt's constitutional rights; he has no constitutional right to appeal his conviction or challenge his conviction in a state post-conviction proceeding. *Laws v. State*, 183 S.W.3d 629, 632 (Mo.App.2006); *Echols v. State*, 168 S.W.3d 448, 451 (Mo.App.2005). Furthermore, it is of no moment that the motion court addressed the merits of Pradt's post-conviction motion. This court still has the discretionary authority to invoke the escape rule and dismiss his appeal. *See, e.g., Smith v. State*, 174 S.W.3d 74, 75 (Mo.App.2005); *Wagner v. State*, 172 S.W.3d 922, 924 (Mo.App.2005); *Crawley*, 155 S.W.3d at 837.

Pursuant to the escape rule, Pradt's appeal is dismissed.

GARRISON and LYNCH, J. Concurs.