# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3378

_____

Alan Echols,                          *
                                      *
              Appellant,              *
                                      *   Appeal from the United States
     v.                               *   District Court for the
                                      *   Western District of Missouri.
Mike Kemna,                           *
                                      *
              Appellee.               *

_____

Submitted: October 16, 2007
Filed: December 26, 2007

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Alan Echols was convicted of first degree murder and armed criminal action in the Circuit Court of Jackson County, Missouri. Before being sentenced, Echols fled the jurisdiction and remained at large for eight years. After his capture, Echols was sentenced to a term of life in prison without the possibility of parole for murder and an additional eight years' imprisonment for his armed criminal action conviction. Echols filed a direct appeal to challenge his convictions. The Missouri Court of Appeals, despite the state of Missouri's objection on escape rule grounds, heard the appeal and affirmed Echols's convictions on the merits. Echols then sought postconviction relief but the Missouri courts denied him relief citing the Missouri

escape rule. Echols now seeks habeas relief. The district court[1] refused to hear his petition for habeas relief because the court determined that the Missouri escape rule is an adequate and independent state law ground barring recovery. We affirm.

## I. *Background*

In October 1990, a Jackson County, Missouri jury convicted Echols of first degree murder and armed criminal action for the stabbing death of Ronald Nichols.[2] After the trial, the court allowed Echols to remain free on bond while he awaited sentencing. Before he could be sentenced, Echols fled the jurisdiction and remained a fugitive for eight years. In August 1999, the authorities arrested Echols in Louisiana and brought him back to Missouri. At sentencing, Echols received a sentence of life

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

[2]Nichols was killed after an altercation with Echols in a Kansas City nightclub parking lot. Apparently, Nichols and Echols competed for the affections of Nichols's wife, Billie Nichols. Billie moved in with Echols in early 1990 after separating from Ronald. By September 1990, Billie decided to end the affair and return to her husband. Echols, however, remained obsessed with Billie and reportedly "kept tabs" on her after their affair ended. Echols told his business partner, Eugene Bailey, that he would kill Ronald Nichols, if he knew it would not upset Billie.

On October 12, 1990, Mr. and Mrs. Nichols went to Club 95 on a night out, and at some point in the evening, Mrs. Nichols sent her husband outside the club to get some medicine for her. Around this time, Echols came to the club with a military style knife that he had stolen from his business partner. When Echols arrived at the club, he attacked Mr. Nichols with a billy club and stabbed him 61 times in the head and back.

Echols told Bailey that Mr. Nichols had been killed, but Echols blamed the killing on a robber. Bailey was suspicious of Echols's story and contacted the police after he realized that his knife was missing and that it was possibly the murder weapon. The police questioned Echols, searched his home, and discovered the knife and Echols's bloody clothing.

in prison for the murder charge and a consecutive sentence of eight years' imprisonment on the armed criminal action charge.

Echols unsuccessfully raised one claim on direct appeal, challenging the use of his confession at trial. After the failure of his direct appeal, he then filed for post conviction relief pursuant to Missouri Supreme Court Rule 29.15. The Missouri Circuit Court determined that the Missouri escape rule barred the hearing of Echols's claim and dismissed his petition. The Missouri Court of Appeals affirmed the dismissal pursuant to the escape rule.

After the Missouri state courts refused to hear his claims for postconviction relief, Echols filed a habeas claim in federal district court. The district court determined that the Missouri escape rule was an adequate and independent state ground that barred his habeas claim and dismissed Echols's petition for habeas relief.

## II. *Discussion*

We issued a certificate of appealability on two issues: (1) whether Missouri's escape rule is firmly established, regularly followed, and readily ascertainable when applied; (2) whether Echol's trial counsel was ineffective in failing to investigate the issue of diminished capacity.

### A. *Adequate and Independent State Law Analysis*

We review de novo the district court's determination that Missouri's escape rule is an adequate and independent state law ground that bars federal habeas review of Echols's conviction. *See Lee v. Kemna*, 534 U.S. 362, 376 (2002) (declaring adequacy a federal question); *see also Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999) (stating that adequacy claims are reviewed de novo).

Generally, a defendant must exhaust all available state court remedies before seeking habeas relief. *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007). "If a

petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." *Id*. (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161 (8th Cir. 1999)). The default of the federal claim applies even if the defendant's failure to exhaust results from the application of state law. *Lee,* 534 U.S. at 375. (Federal courts will not entertain the habeas claim "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "The rule applies with equal force whether the state-law ground is substantive or procedural." *Id*. However, even if a state procedural rule is generally sound, it will not be adequate to bar federal review, unless the rule is "strictly or regularly followed." *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964). Further, a state procedural bar is adequate only if state courts have applied the rule evenhandedly to all similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982).

The Missouri escape rule provides that state courts have the discretion to refuse to hear a defendant's appeal when the defendant escapes from the control of the state. *See State v. Simpson*, 836 S.W.2d 75, 77–78 (Mo. App. 1992). The Missouri courts' authority to deny appellate or postconviction relief under this rule is triggered by proof that the defendant has, in fact, escaped, *see id*. (reversing the application of the escape rule where there was no loss of control over the defendant), and that the defendant's escape has impacted the administration of justice. *See State v. Brown*, 974 S.W.2d 630, 631 (Mo. App. 1998).[3]

---

[3]While the escape must have an impact on the administration of justice before the escape rule may be applied, the court is not required to make an explicit finding on the record before applying the rule. *See Laws v. State*, 183 S.W.3d 629, 634 (Mo. App. 2006) (holding that there was no error where the motion court denied the defendant's motion for postconviction relief without an express finding that the defendant's escape impacted the criminal justice system).

Echols argues that the Missouri escape rule is inadequate to bar his federal claim for habeas relief because of the broad discretion granted to courts in deciding whether it should apply. Echols also alleges that Missouri has arbitrarily applied the rule in the past. Echols's claims are without merit.

The relevant inquiry regarding the adequacy of the escape rule to bar habeas relief is two fold. First, we must determine if the rule is strictly or regularly followed, and then we will determine if the rule has been applied evenhandedly to all similar claims.

### 1. *Strictly or Regularly Followed*

We are satisfied that Missouri's escape rule has been regularly followed in cases similar to Echols's, that is, where the defendant has escaped for a substantial period of time, without any mitigating circumstances. *See generally Dobbs v. State*, 229 S.W.3d 651 (Mo. App. 2007) (affirming the motion court's refusal to hear the defendant's petition for postconviction relief where the defendant escaped while awaiting sentencing and remained at large for several months before he was recaptured); *Pradt v. State*, 219 S.W.3d 858 (Mo. App. 2007) (applying the rule where the defendant escaped twice and in both circumstances, had to be forcefully brought back before the court); *Laws v. State*, 183 S.W.3d 629 (Mo. App. 2006) (affirming the motion court's refusal to hear the defendant's petition for postconviction relief where the defendant fled from sentencing and remained at large for eighteen days before he was recaptured); *Crawley v. State*, 155 S.W.3d 836 (Mo. App. 2005) (affirming the motion court's refusal to hear the defendant's request for postconviction relief where the defendant escaped before he could be sentenced on a probation violation and remained at large for over eighteen months before being recaptured); *State v. Surritte*, 35 S.W.3d 873, 875 (Mo. App. 2001) (applying the escape rule to refuse to hear the defendant's direct appeal of his conviction where the defendant escaped for four days causing a 14-day delay in sentencing).

Missouri cases take note of the length of the escape, but the more important consideration is whether the application of the rule furthers any of the eight recognized rationales for the rule's maintenance. *See Holmes v. State*, 92 S.W.3d 193, 196 (Mo. App. 2002) (holding that "[t]here is no threshold amount of time an appellant must have escaped justice before dismissal is allowed"); *see also Pradt*, 219 S.W.3d at 862 (enumerating the eight recognized justifications for the escape rule).[4]

Echols contends that the discretion given to the Missouri courts renders the escape rule inadequate to default his habeas claims. We disagree. A rule is not inadequate merely because its application is discretionary. The Supreme Court's comments in *Harris v. Reed*, 489 U.S. 255 (1989), contemplate instances where a rule may be deemed adequate even though there is state court discretion in its enforcement. In *Harris*, the issue before the court was whether the plain statement rule—a rule requiring a clear and express statement from a state court that it is relying on a procedural default to bar relief—should apply in habeas cases. In a footnote, the Court stated, "in some instances state courts have discretion to forgive procedural defaults. . . . The plain statement rule relieves a federal court from having to determine whether in a given case, consistent with state law, the state court has chosen to forgive a procedural default." *Id.* at 265 n.11. If a procedural rule that gave discretion to the state was per se inadequate, the plain statement rule would be unnecessary.

We conclude the Missouri escape rule is regularly followed.

_____

[4]The recognized justifications for the escape rule are: (1) to maintain control over the defendant while the case is being decided; (2) to reduce the possibility of administrative problems that arise because of a defendant's long absence; (3) to protect the State from unfair prejudice in the event that the case is remanded for a new trial; (4) to prevent the defendant from selectively obeying court decisions; (5) to discourage others from escaping; (6) to encourage defendants who escape to voluntarily surrender; (7) to preserve respect for the criminal justice system; and (8) to promote the dignified operation of the appellate courts. *Pradt*, 219 S.W.3d at 862.

## 2. *The Escape Rule is Applied*
### *Consistently to Similarly Situated Defendants*

Echols's claim that the Missouri escape rule has been inconsistently applied is also without merit. Echols raises two arguments to demonstrate that Missouri does not consistently apply the escape rule to similarly situated defendants and that its application of the rule is arbitrary. First, he cites several cases involving similar escape periods and notes that the Missouri courts applied the escape rule differently. Second, Echols asserts that his own state appellate process reflects arbitrary enforcement.

None of the cases Echols cites show that a defendant, similarly situated to him, received postconviction appellate review. Echols remained at large for eight years before his capture. In *State v. Kearns*, the Missouri Court of Appeals applied the escape rule to deny the defendant a direct appeal of his conviction after the defendant escaped and remained a fugitive for more than five years. 743 S.W.2d 553 (Mo. App. 1987). The court determined that application of the rule was appropriate primarily because the defendant's absence caused great delay in sentencing, created a high risk of prejudice to the state if the court ordered a remand for a new trial, and demonstrated the defendant's contempt for the criminal justice system. *Id.* at 554. *Kearns* is similar to this case and indicative of the Missouri courts' handling of similar cases. Echols has not shown that Missouri treated him differently than it would another similarly situated defendant.

Finally, Missouri's application of the rule in Echols's case was not arbitrary. Under Missouri precedent, the escape rule can be applied by either the state appellate court—both on direct review of the conviction and on appeal in a postconviction proceeding—or by the state circuit court when the circuit court is petitioned to conduct a collateral review of a conviction. In Echols's case, the Missouri Court of Appeals chose not to apply the escape rule to bar Echols's direct appeal, choosing instead to summarily deny him relief on the merits of his claim. *State v. Echols*, 32 S.W.3d 623 (2000). When the case came before the circuit court for postconviction

review, the circuit court dismissed the petition pursuant to the escape rule. On appeal, the court of appeals merely upheld the circuit court's decision to dismiss the case under the escape rule.

Missouri's escape rule is governed by an identifiable standard and is thus not arbitrarily applied. "The relevant inquiry in determining whether to apply the escape rule is deciding whether the escape adversely affected the criminal justice system." *State v. Ore*, 192 S.W.3d 723, 725 (Mo. App. 2006) (quoting *Smith v. State*, 174 S.W.3d 74, 75 (Mo. App. 2005)). The standard, while broad, is not illusory. In fact, the Missouri Court of Appeals recently reversed a motion court's decision to refuse to hear a defendant's application for postconviction relief finding that "the trial court abused its discretion in the application of the escape rule because the failure of Movant to appear at the first sentencing hearing did not hinder the administration of justice." *Smith v. State*, 173 S.W.3d 928, 930 (Mo. App. 2005). If this standard was truly illusory, there would have been no basis on which the appellate court could have found an abuse of discretion.

Because the Missouri escape rule is regularly followed, and the rule is applied consistently to similarly situated defendants, the rule is adequate to bar Echols from federal habeas relief.

### B. *Echols's Ineffective Assistance of Counsel Claim*

Because we determine that Echols's petition for habeas relief is barred by the Missouri escape rule, we make no determinations as to the merits of his Sixth Amendment claim.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____