

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| MICHAEL D. WARTENBE, | ) | No. ED106462 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| vs. | ) | |
| | ) | Honorable Troy K. Hyde |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: August 13, 2019 |

### Introduction

Michael D. Wartenbe ("Wartenbe") appeals the motion court's dismissal of his Rule 24.035[1] motion based on the escape rule. Wartenbe raises two points on appeal. Point One posits that the motion court improperly invoked the escape rule without ruling on the merits of Wartenbe's claims, thereby violating his constitutional rights. Point Two maintains that the motion court violated Wartenbe's statutory right to seek post-conviction relief by dismissing his Rule 24.035 motion. Recognized judicial authority clearly establishes that the motion court's application of the escape rule did not violate Wartenbe's constitutional rights. Further, Section 547.360[2] does not create an absolute statutory right to seek post-conviction relief. Because the motion court did not abuse its discretion in applying the escape rule to dismiss Wartenbe's post-

---

[1] All Rule references are to Mo. R. Crim. P. (2017).
[2] All Section references are to RSMo (2016).

conviction motion, Wartenbe fails to establish clear error. Accordingly, we affirm the motion court's dismissal.

## Factual and Procedural History

Wartenbe was involved in various activities that culminated with Wartenbe driving and losing control of a truck in which two minor children were passengers. Wartenbe drove the truck into a ditch and damaged a nearby mailbox. The two children were injured as a result of the incident. Wartenbe left the scene before the police arrived. The State charged Wartenbe with two counts of endangering the welfare of a child in the first degree, two counts of tampering in the first degree, two counts of assault in the second degree, one count of leaving the scene of a motor vehicle accident, and one count of property damage in the second degree.

On December 3, 2014, Wartenbe entered a group plea in which he pleaded guilty to the two tampering charges and to leaving the scene of a motor vehicle accident. The State dismissed the remaining counts. The plea court accepted Wartenbe's guilty plea and sentenced him to eighteen years in prison. The plea court then suspended the execution of Wartenbe's sentence and placed him on supervised probation for five years.

On October 28, 2015, after reviewing an allegation that Wartenbe violated his conditions of probation, the circuit court suspended Wartenbe's probation and scheduled a probation revocation hearing for December 2, 2015. The circuit court rescheduled the hearing for May 3, 2016. At the hearing, Wartenbe admitted to violating his probation by failing to pay restitution. The circuit court instructed Wartenbe to make a payment toward restitution and it reinstated his probation with the expectation that the remaining restitution be paid in full by the next court date. The circuit court then continued the case to August 2, 2016 for a probation violation hearing.

2

On June 13, 2016, Wartenbe's mother informed the probation officer that she had checked Wartenbe into a hospital due to severe panic attacks. The probation officer instructed the mother to have Wartenbe contact the officer if the hospital did not discharge him within one week. On June 22, 2016, Wartenbe failed to report to his probation officer. The probation officer unsuccessfully attempted to contact Wartenbe. Wartenbe again failed to report to the probation officer on June 29, 2016, July 6, 2016, and July 27, 2016. When Wartenbe did not appear for the August 2, 2016 probation violation hearing, the circuit court issued a warrant for his arrest. Wartenbe was taken into custody on November 15, 2016.

On December 6, 2016, the circuit court revoked Wartenbe's probation and executed his eighteen-year sentence after Wartenbe admitted his failure to report to his probation officer. Wartenbe later sought post-conviction relief pursuant to Rule 24.035, alleging various errors by the plea court and plea counsel when Wartenbe initially entered his guilty plea. The motion court first granted Wartenbe's request for an evidentiary hearing, but later, upon the State's motion, dismissed Wartenbe's Rule 24.035 motion without an evidentiary hearing, pursuant to the escape rule. Wartenbe now appeals.

## Points on Appeal

Wartenbe raises two points on appeal, both alleging motion-court error. In Point One, Wartenbe contends that the motion court's application of the escape rule without ruling on the merits of his post-conviction claims denied Wartenbe his constitutional rights. In Point Two, Wartenbe posits that the motion court's dismissal of his Rule 24.035 motion under the escape rule violated his statutory right to seek post-conviction relief.

## Standard of Review

We review a motion court's dismissal of a movant's Rule 24.035 motion for clear error. Rule 24.035(k) ("Appellate review of the [motion] court's action on the motion filed under this

3

Rule 24.035 shall be limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous."); Musgrove v. State, 567 S.W.3d 237, 239 (Mo. App. S.D. 2018). "Findings and conclusions are clearly erroneous only if, after a review of the entire record, the court is left with a definite and firm impression that a mistake has been made." Echols v. State, 168 S.W.3d 448, 451 (Mo. App. W.D. 2005) (internal citation omitted).

Discussion

Wartenbe raises a myriad of constitutional and statutory challenges to the motion court's application of the escape rule to dismiss his post-conviction claims. In his constitutional challenge, Wartenbe argues that the application of the escape rule denies him his rights to substantive and procedural due process, to be free from cruel and unusual punishment, to separation of powers, to access to the courts, and to be free from double jeopardy in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I §§ 10, 14, 18(a), 19, and 21, and Article II, Sect. 1 of the Missouri Constitution. Because Wartenbe raises multiple constitutional challenges in one point on appeal, his point on appeal is multifarious. See Peters v. Johns, 489 S.W.3d 262, 268 n.8 (Mo. banc 2016); see also Kirk v. State, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017) (internal citation omitted) ("A point relied on violates Rule 84.04(d) when it groups together multiple, independent claims rather than a single claim of error, and a multifarious point is subject to dismissal."). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." Kirk, 520 S.W.3d at 450 n.3 (quoting Peters, 489 S.W.3d at 268 n.8). We nonetheless exercise our discretion to address Wartenbe's most developed constitutional claim: whether application of the escape rule violates Wartenbe's right to due process.

Importantly, neither the United States nor Missouri Constitutions grants Wartenbe a right to post-conviction relief. And because the judicially created escape rule empowers a motion

4

court to invoke a valid exception to Wartenbe's otherwise statutorily permissive motion for post-conviction relief, the motion court did not err in dismissing Wartenbe's Rule 24.035 motion.

## I. Point One—the Escape Rule and Wartenbe's Constitutional Right to Due Process

Post-conviction proceedings are not criminal proceedings, but are considered civil in nature. Pennsylvania v. Finley, 481 U.S. 551, 556–57 (1987). Post-conviction proceedings are "collateral attack[s] that normally occur[] only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief[.]" Id. at 557 (holding that defendants have no constitutional right to counsel for post-conviction proceedings). Instead, "[i]t is within the 'substantial discretion' of the states to determine post-conviction procedures." Smith v. State, 887 S.W.2d 601, 602 (Mo. banc 1994) (quoting Finley, 481 U.S. at 559). In pursuing a post-conviction motion, the movant "is entitled only to the procedures available under the Rule." Id. The escape rule is a procedural doctrine established "to protect the orderly and efficient use of [the court's] resources" in post-conviction proceedings. State v. Troupe, 891 S.W.2d 808, 811 (Mo. banc 1995); Nichols v. State, 131 S.W.3d 863, 865 (Mo. App. E.D. 2004).

"The escape rule is a judicially-created doctrine that operates to deny the right of appeal to a criminal defendant who escapes justice." Parsons v. State, 383 S.W.3d 71, 73 (Mo. App. E.D. 2012) (quoting Crawley v. State, 155 S.W.3d 836, 837 (Mo. App. E.D. 2005) (per curiam)); see also State v. McKay, 519 S.W.3d 886, 888 (Mo. App. E.D. 2017). "In post-conviction cases, the escape rule has been invoked both to dismiss appeals where the motion court reached the merits of the movant's claim and to affirm the motion court's dismissal of a motion based on its own application of the rule." Echols, 168 S.W.3d at 451. "There is no threshold amount of time an appellant must have escaped justice before dismissal is allowed." Holmes v. State, 92 S.W.3d 193, 196 (Mo. App. W.D. 2002). "In applying the escape rule, the relevant inquiry is whether

5

the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate." Troupe, 891 S.W.2d at 811.

Missouri courts have justified using the escape rule to procedurally bar review of an appeal or post-conviction motion of an escaping defendant on the following grounds:

> (1) the need for a court to have control over the defendant before making a decision on appeal; (2) curtailment of administrative problems caused by the defendant's long absence; (3) preventing prejudice to the State in the event of remand for a new trial; (4) preventing the defendant from selectively abiding by court decisions; (5) discouraging escape; (6) encouraging voluntary surrender; (7) preserving respect for the criminal justice system; and (8) promoting the dignified operation of the appellate courts.

Pradt v. State, 219 S.W.3d 858, 862 (Mo. App. S.D. 2007) (internal citation omitted); see Hicks v. State, 824 S.W.2d 132, 134 (Mo. App. S.D. 1992). In applying the escape rule, "Missouri does not follow a per se dismissal rule[.]" Pradt, 219 S.W.3d at 862 (internal citation omitted). Instead, the decision to dismiss rests soundly within the discretion of the court. See Musgrove, 567 S.W.3d at 239; Pradt, 219 S.W.3d at 862.

The escape rule reinforces a fundamental principle that "[t]hose who seek the protection of this legal system must . . . be willing to abide by its rules and decisions." State v. Wright, 763 S.W.2d 167, 168–69 (Mo. App. W.D. 1988); see Troupe, 891 S.W.2d at 810. The court may apply the escape rule equally to persons who avoid impending or immediate incarceration as well as to persons avoiding the possibility of incarceration through a revocation of probation or parole. Hicks, 824 S.W.2d at 133 (internal citations omitted). "Release of a convicted defendant on probation is a matter of grace to begin with, and [the movant] should not be free to abuse that grace with impunity." Theodoran v. State, 319 S.W.3d 479, 482 (Mo. App. S.D. 2010). Further, "[a]n escape shows contempt for the authority of the court and for the judicial process." Hicks, 824 S.W.2d at 134 (internal citations omitted). "A defendant who shows . . . disregard for the rules and decisions of the judicial system should not be permitted to then seek relief from that

6

same system." Theodoran, 319 S.W.3d at 482. Dismissing a defendant's appeal by invoking the escape rule "fosters the goals of discouraging escape and promoting respect for the criminal justice system." Musgrove, 567 S.W.3d at 240.

Applying the escape rule to preclude either a post-conviction hearing or a post-trial appeal "does not violate a defendant's constitutional rights because neither a right to appeal a conviction nor a right to a state post-conviction proceeding exists." Echols, 168 S.W.3d at 451 (internal citations omitted); see also Musgrove, 567 S.W.3d at 239; Wallace v. State, 286 S.W.3d 864, 867 (Mo. App. S.D. 2009); Nelson v. State, 210 S.W.3d 477, 479 (Mo. App. S.D. 2007); Laws v. State, 183 S.W.3d 629, 632 (Mo. App. S.D. 2006).

We note further that the United States Supreme Court has previously held that the Missouri escape rule does not implicate due process concerns "[b]ecause due process does not require a State to provide appellate process at all[.]" Goeke v. Branch, 514 U.S. 115, 120 (1995) (per curiam) (internal citations omitted) (referring to Missouri's escape rule and the federal version—the fugitive dismissal rule—interchangeably). Indeed, "[t]here can be no argument that the [escape rule] . . . violates the Constitution because a convicted criminal has no constitutional right to an appeal." Id. at 119 (quoting Ortega-Rodriguez v. United States, 507 U.S. 234, 253 (1993) (Rehnquist, C.J., dissenting)); see also Allen v. Georgia, 166 U.S. 138, 141 (1897) ("By escaping from legal custody [the movant] has, by the laws of most, if not all, of the states, committed a distinct criminal offense; and it seems but a light punishment for such offense to hold that he [or she] has thereby abandoned his right to prosecute a writ of error, sued out to review his conviction[.]"). "Because there is no fundamental right at stake, Missouri's application of the escape rule in this case must have some rational relationship to a legitimate state interest to comply with the Due Process Clause." Troupe, 891 S.W.2d at 812 n.5.

Wartenbe cites Robinson v. State to suggest that the escape rule does not further a legitimate state interest because the rule promotes corruption and "the temptation to complete the proceedings in a less than diligent manner secure in the knowledge that any errors resulting from procedural short cuts would not result in reversal." 854 S.W.2d 393, 396 (Mo. banc 1993). Importantly, Robinson dealt with allegations of court error that occurred **after** the defendant was returned to custody. Id. at 396 (finding that where the defendant escaped prior to the imposition of a sentence, the escape rule should not be used to dismiss challenges to post-capture alleged errors involving the variation between the sentences recommended in the plea arrangement and the sentences imposed). We agree that the escape rule cannot be invoked to preclude a review of errors alleged to have occurred after the movant is returned to custody. Id. Here, Wartenbe eluded authorities for 105 days **after** the trial court scheduled his probation revocation hearing. But the errors alleged by Wartenbe in his Rule 24.035 motion occurred during his plea hearing, **before** Wartenbe absconded from authorities. The holding in Robinson thus is inapposite and has no application to Wartenbe's escape. Id. Here, the plea court plainly and clearly informed Wartenbe of the conditions of his probation, and the severe consequences should Wartenbe violate probation. Wartenbe accepted probation with its conditions, and then knowingly violated the terms of his probation. To avoid the likely and imminent consequences of the revocation of his probation, Wartenbe chose not to appear at his scheduled hearing and avoided capture by law enforcement for several months. After his capture, the circuit court executed Wartenbe's eighteen-year sentence. The motion court's dismissal of Wartenbe's motion for post-conviction relief and refusal to consider Wartenbe's challenge to his sentence comports with Missouri's interest in discouraging escape and promoting respect for the judicial system. See Musgrove, 567 S.W.3d at 240; Theodoran, 319 S.W.3d at 482; Hicks, 824 S.W.2d at 134. Accordingly, the

8

motion court's dismissal of Wartenbe's Rule 24.035 motion under the escape rule does not violate Wartenbe's right to due process. Troupe, 891 S.W.2d at 812 n.5.

We are not blind to the potential misuse of the escape rule, as cautioned in Ortega-Rodriguez:

> [A]n expansion of this reasoning that would allow an appellate court to sanction by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct has no connection to the course of appellate proceedings . . . would sweep far too broadly, permitting, for instance, this Court to dismiss a petition solely because the petitioner absconded for a day during district court proceedings, or even because the petitioner once violated a condition of parole or probation.

507 U.S. at 246. While we are aware of the potential for abuse resulting from an overly broad application of the rule, we must balance this concern against the rule's purpose: that "[t]hose who seek the protection of this legal system must . . . be willing to abide by its rules and decisions." Wright, 763 S.W.2d at 168–69; see Troupe, 891 S.W.2d at 810–11 (discussing Ortega-Rodriguez, 507 U.S. at 250) ("This Court will not adopt a rule that permits a defendant to benefit from his own misconduct.").

Our review of the record and the motion court's dismissal of Wartenbe's claims fosters certainty that the motion court did not abuse its application of the escape rule. See Echols, 168 S.W.3d at 451. This Court repeatedly has found that absconding after violating the terms of probation demonstrates the requisite contempt for the judicial process justifying dismissal of the absconder's claims under the escape rule. See Theodoran, 319 S.W.3d at 482; Hicks, 824 S.W.2d at 134. Here, the motion court dismissed Wartenbe's motion not because he violated the terms of his probation, but because Wartenbe knowingly and intentionally failed to report to his probation officer and to appear for his scheduled revocation hearing. We are not persuaded that the motion court's dismissal of Wartenbe's post-conviction-relief motion presents an unjust or arbitrary act of the court as feared in Ortega-Rodriguez. 507 U.S. at 246.

9

We adhere to well-established judicial precedent in concluding that Wartenbe's constitutional argument fails because Wartenbe has no constitutional right to post-conviction relief and the motion court's dismissal of Wartenbe's claims pursuant to the escape rule does not violate his constitutional right to due process. Point One is denied.

## II.    Point Two—the Escape Rule and Section 547.360

Wartenbe's second point on appeal focuses on his statutory rights to seek post-conviction relief. Wartenbe posits that the dismissal of his post-conviction-relief claim violated his right to due process of law because he had a statutory right under Section 547.360 to seek post-conviction relief. Critical to his argument, Wartenbe maintains there exists no statutory or regulatory exception to this right. We disagree.

Section 547.360 provides:

> A person convicted of a felony on a plea of guilty or after trial and delivered to the custody of the department of corrections who claims that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this section. This section provides the exclusive procedure by which such person *may* seek relief in the sentencing court for the claims enumerated. The procedure to be followed for motions filed pursuant to this section is governed by the rules of civil procedure insofar as applicable.

Section 547.360.1 (emphasis added). Rule 24.035(a) likewise provides that the movant "may seek relief" for claims enumerated in the rule, so long as the applicable procedure is followed.

Wartenbe is misguided in his belief that Section 547.360 provides him an absolute statutory right to seek post-conviction relief. Although Section 547.360 provides Wartenbe an avenue to file a post-conviction-relief motion, Section 547.360 "was not intended to and did not create a second and independent avenue for post-conviction relief" beyond that found in Rules 24.035 and 29.15. Schleeper v. State, 982 S.W.2d 252, 254 (Mo. banc 1998). Therefore,

10

Wartenbe has no new or different rights under Section 547.360 than he had under Rule 24.035. Id.

The Missouri Legislature and Supreme Court of Missouri created Section 547.360 and Rule 24.035 in order to provide an avenue for relief for defendants who pleaded guilty in error. See Schleeper, 982 S.W.2d at 253–54; Keeney v. Hereford Concrete Prods., 911 S.W.2d 622, 624 (Mo. banc 1995) (internal quotation omitted) (recognizing that courts "lack authority to read into a statute a legislative intent contrary to the intent made evident by the plain language [of a statute]"). The term "may," as used in both Section 547.360 and Rule 24.035(a), indicates a permissive action, not a mandatory action. See Silvey v. Bechthold, 499 S.W.3d 760, 763 (Mo. App. W.D. 2016) (internal citation omitted). Moreover, because Missouri does not recognize a constitutional right to appeal, the legislature's use of the term "may" defeats Wartenbe's argument that a movant has an unqualified right to appeal his or her plea in a civil proceeding. See Echols, 168 S.W.3d at 451. Notably, Wartenbe is entitled to pursue post-conviction relief only under the procedures specified in Rule 24.035. See Schleeper, 982 S.W.2d at 253 n.2, 254; Smith, 887 S.W.2d at 602. Neither Rule 24.035 nor Section 547.360 guarantees Wartenbe a statutory right to post-conviction relief. See Keeney, 911 S.W.2d at 624; Silvey, 499 S.W.3d at 763.

The escape rule has evolved in Missouri jurisprudence as a procedural doctrine "to protect the orderly and efficient use of [the court's] resources" in post-conviction proceedings. Troupe, 891 S.W.2d at 811; Nichols, 131 S.W.3d at 865. The escape rule operates to bar the appeal of a criminal defendant who escapes justice. Parsons, 383 S.W.3d at 73. As discussed above, the escape rule does not hinder Wartenbe's right to due process. Further, "[i]t is within the 'substantial discretion' of the states to determine post-conviction procedures." Smith, 887

11

S.W.2d at 602 (quoting Finley, 481 U.S. at 559). Importantly, the escape rule does not restrict Wartenbe's opportunity to **file** a post-conviction-relief motion. The rule merely hinders an absconding defendant from benefitting as a result of his escape by challenging actions occurring prior to the escape; the rule simply places procedural barriers on a movant's option to challenge the entry of a guilty plea. See Troupe, 891 S.W.2d at 811 ("This Court will not adopt a rule that permits a defendant to benefit from his own misconduct."); Smith, 887 S.W.2d at 602. Wartenbe knowingly waived his ability to pursue post-conviction relief by absconding from legal authorities for 105 days. See Troupe, 891 S.W.2d at 811; Theodoran, 319 S.W.3d at 482; Hicks, 824 S.W.2d at 134. Point Two is denied.

## III.    No Clear Error

Wartenbe does not assert on appeal that his escape did not adversely affect the criminal justice system. Instead, Wartenbe challenges the motion court's dismissal only upon constitutional and statutory grounds. Nevertheless, our review of the facts and record shows that the motion court's application of the escape rule was both appropriate and consistent with substantive Missouri law.

Wartenbe admittedly violated the terms of his probation by refusing to communicate with his parole officer after he was released from the hospital. Although Wartenbe's mother provided justification for him not communicating with his probation officer while he was hospitalized, Wartenbe was obligated to contact his probation officer upon his release, and was required to appear at his probation revocation hearing. The plea court expressly informed Wartenbe of the consequences of a probation violation. After the probation officer reported Wartenbe's violations, the circuit court issued a warrant for his arrest. Wartenbe then absented himself from the judicial system for 105 days. See Musgrove, 567 S.W.3d at 240 (finding even a four-day escape was sufficient amount of time to consider application of the escape rule).

12

The substantive policies underlying the escape rule justify applying the rule to Wartenbe's motion for post-conviction relief. See Pradt, 219 S.W.3d at 862. "Release of a convicted defendant on probation is a matter of grace, and his acceptance subjects him to the conditions of his probation." Hicks, 824 S.W.2d at 134 (internal citation omitted). "Grace notwithstanding, [Wartenbe] knowingly violated the terms of his probation . . . . He attempted to place himself beyond the control of the department of corrections and demonstrated his contempt for the very system of justice that granted him probation in lieu of incarceration." Id. Wartenbe's escape adversely affected the criminal justice system. See id.; see also Troupe, 891 S.W.2d at 811. The motion court did not err in dismissing Wartenbe's Rule 24.035 motion pursuant to the escape rule. See Musgrove, 567 S.W.3d at 239; Echols, 168 S.W.3d at 451.

For the reasons detailed above, Wartenbe's points on appeal are denied.

<u>Conclusion</u>

The dismissal of the motion court is affirmed.

_____
KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.